# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES LACOURTE, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br> - against –<br><br>JPMORGAN CHASE & CO., NCO GROUP, INC. n/k/a EXPERT GLOBAL SOLULTIONS, INC., NCO FINANCIAL SYSTEMS, INC., ONE EQUITY PARTNERS a/k/a ONE EQUITY PARTNERS HOLDING CORPORATION a/k/a ONE EQUITY PARTNERS LLC a/k/a ONE EQUITY PARTNERS II, L.P., FORSTER & GARBUS LLP and DOES 1 THROUGH 150 LAW FIRM AFFILIATES OF NCO GROUP, INC. AND NCO FINANCIAL SYSTEMS, INC.,<br><br>      Defendants | Case No. 12-CV-9453(JSR)<br><br>Jed S. Rakoff, USDJ |

### MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT FILED JOINTLY BY NCO GROUP, INC., NCO FINANCIAL SYSTEMS, INC. AND FORSTER & GARBUS LLP

**TUSA P.C.**
Joseph S. Tusa.
1979 Marcus Avenue, Ste. 201
Lake Success, NY  11042
Tel. (516) 622-2212

**GISKAN SOLOTAROFF ANDERSON**
 **& STEWART LLP**
Catherine E. Anderson
Oren Giskan
Jason Solotaroff
11 Broadway, Ste. 2150
New York, New York 10004
Tel. (212) 847-8315

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………..1

PROCEDURAL HISTORY ...............................................................................................2

STATEMENT OF FACTS ..................................................................................................2

STANDARD OF REVIEW ................................................................................................3

ARGUMENT…………………………………………………………………………...3

    I.       Defendants' Serial Motion Practice is Barred By Rule 12 (G)……...………..3

    II.      Plaintiff Adequately Pleads Defendants' FDCPA Violations……………………4

         A.     Defendants Admit Plaintiff Pleads a Timely FDCPA
Claim…………………………………………………………..………..6

             1.     NCO, NCOF and F&G Concede that Plaintiff Pleads, and their
Records Demonstrate, Debt Collection Within the One-Year
FDCPA Statute of Limitations……………………………………7

             2.     False Information About Plaintiff's American Express Debt Was
Furnished to the Credit Bureaus Within the FDCPA Statute of
Limitations…………………………………………………………...7

             3.     The *LaCourte Action* Included timely FDCPA Violations………..8

             4.     NCO, NCOF and F&G Engaged In a Deceptive Pattern of FDCPA
Violations that Caused a Continuing Harm to Plaintiff and Tolled
the Statute of Limitations……………………………………………9

         B.     NCO NCOF and F&G Fail to Prove Their *Bona Fide* Error Defense…...12

         C.     NCO is a Debt Collector…………………………………………………....15

    III.    PLAINTIFF PLEADS A CLAIM FOR VIOLATIONS OF THE FAIR CREDIT
REPORTING ACT……………………………………………………………16

    IV.    PLAINTIFF HAS SUFFICIENTLY PLED A NEW YORK GBL §349
CLAIM…………………………………………………………………………..18

    V.    PLAINTIFF HAS STATED A CLAIM AGAINST DEFENDANT FORSTER &
GARBUS FOR VIOLATION OF THE NEW YORK JUDICIARY LAW
§487……………………………………………………………………….....21

CONCLUSION…………………………………………………………………………..25

## TABLE OF AUTHORITIES

*Agostino v. Quest Diagnostics, Inc.,*
    2011 U.S. Dist. LEXIS 127904 (D.N.J. Nov. 3, 2011)...............................13

*Allen v. NCO Fin. Sys., Inc.,*
    2002 U.S. Dist. LEXIS 10513 (N.D. Ill. June 11, 2002)................................5

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009).....................................................................3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................3

*Bentley v. Great Lakes Collection Bureau, Inc.,*
    6 F.3d 60 (2d Cir. 1993)...................................................................12

*Brandon v. Financial Accounts Servs. Team,*
    701 F. Supp. 2d 990 (E.D. Tenn. 2010)....................................................8

*Campos v. Brooksbank,*
    120 F. Supp. 2d 1271 (D.N.M. 2000).......................................................9

*Charrons v. Pinnacle Group NY LLC,*
    269 F.R.D. 221 (S.D.N.Y. 2010)..........................................................20

*City of New York v. Beretta U.S.A. Corp.,*
    524 F.3d 384 (2d Cir. 2008) *cert. denied,* 129 S. Ct. 1579 (2009)....................3

*Clomon v. Jackson,*
    988 F.2d 1314 (2d Cir. 1993)...........................................................5, 7

*Consol. Edison, Inc. v. Ne. Utilities,*
    426 F.3d 524 (2d Cir. 2005)............................................................7, 21

*Diaz v. Portfolio Recovery Assocs., LLC,*
    2012 U.S. Dist. LEXIS 72724, (E.D.N.Y. May 23, 2012)..................................24

*Discovery Ortho Ptnrs, LLC v. Osseous Techs. of Am., Inc.,*
    2010 U.S. Dist. LEXIS 84161, (S.D.N.Y. Aug. 16, 2010)..................................4

*Easterling v. Collecto, Inc.,*
    692 F.3d 229 (2d Cir. 2012)...........................................................5, 12

*Ehrich v. RJM Acquisitions LLC,*
    2009 U.S. Dist. LEXIS 113929  (E.D.N.Y. Dec. 4, 2009)...........................7

*Ellis v. Cohen & Slamowitz,*
    LLP, 701 F. Supp. 2d 215 (N.D.N.Y 2010).....................................12, 13, 20

*Ellis v. Solomon & Solomon,*
    P.C., 591 F.3d 130 (2d Cir. 2010)...........................................................12

*Foti v. NCO Fin. Sys.,*
    424 F. Supp. 2d (S.D.N.Y. 2006)..............................................................4

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,*
    66 N.Y.2d (1985)..................................................................................21

*Goldman v. Cohen,*
    445 F.3d 152 (2d Cir. 2006)...................................................................16

*Goldman v. Simon Prop. Group, Inc.,*
    58 A.D.3d 208 (2d Dep't 2008)...............................................................21

*Gruen v. Edfund & Van Ru Credit Corp.,*
    2009 U.S. Dist. LEXIS 60396 (N.D. Cal. July 15, 2009).............................11

*Harvey v. Great Seneca Fin. Corp.,*
    453 F.3d 324 (6th Cir. 2006)..................................................................14

*Hasbrouck v. Arrow Fin. Servs. LLC,*
    2011 U.S. Dist. LEXIS 53928 (N.D.N.Y May 19, 2011)..............................14

*Heintz v. Jenkins,*
    514 U.S. 291 (1995)............................................................................16

*Herkert v. MRC Receivables Corp.,*
    655 F. Supp. 2d 870 (N.D. Ill. 2009).......................................................15

*Holmes v. Poskanzer,*
    2009 U.S. App. LEXIS 15976 (2d Cir. July 21, 2009)..................................3

*Hrivnak v. NCO Portfolio Mgmt.,*
    723 F. Supp. 2d 1020 (N.D. Ohio 2010)...................................................15

*Jenkins v. Heintz,*
    124 F.3d 824, 834 (7th Cir. 1997); *Bank,* 2009 U.S. Dist. LEXIS 47544..........14

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*
    130 S. Ct. 1605 (2010)..................................................................13

*Josey v. Sallie Mae, Inc.,*
    2009 U.S. Dist. LEXIS 72157 (S.D.N.Y. Aug. 17, 2009)...........................17

*Judy v. Blatt, Hasenmiller, Leibsker, and Moore, LLC,*
    2010 U.S. Dist. LEXIS 8027 (N.D. Ill. Jan. 29, 2010)..................................8

*Lennon v. Penn Waste, Inc.,*
    2009 U.S. Dist. LEXIS 93690 (M.D. Pa. Oct. 7, 2009)................................11

*Lindor v. Forster & Garbus, LLP,*
    914 N.Y.S.2d 867 (N.Y. Sup. Ct., Kings. Co. 2010)...................................18

*McCurdy v. American Bd. of Plastic Surgery,*
    157 F.3d 191 (3d Cir. 1998)..................................................................4

*Miller v. Midland Credit Mgmt, Inc.,*
    621 F. Supp. 2d 621(N.D. Ill. 2009)..................................................15, 16

*Miller v. Upton, Cohen & Slamowitz,*
    687 F. Supp. 2d 86 (E.D.N.Y. 2009).....................................................16

*Miller v. Wolpoff & Abramson, L.L.P.,*
    321 F.3d 292 (2d Cir. 2003).............................................................3, 5

*Negrin v. Norwest Mtge., Inc.,*
    263 A.D.2d 39 (2d Dep't 1999)...........................................................21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    85 N.Y.2d 25 (1995)........................................................................18

*Palkovic v. Johnson,*
    281 Fed. Appx. 63 (2d Cir. 2008)...........................................................3

*Pelman v. McDonald's Corp.,*
    396 F.3d 508 (2d Cir. 2005)................................................................19

*Pilgrim Badge & Label Corp. v. Barrios,*
    857 F.2d 1 (1st Cir. 1998)....................................................................4

*Puglisi v. Versus Debt Recovery Sol., LLC,*
    2010 U.S. Dist. LEXIS 6120 (E.D.N.Y. Jan. 26, 2010)..................................7

*Purnell v. Arrow Fin. Serv., LLC.,*
    303 Fed. Appx. 297 (6th Cir. 2008).......................................................8

*Putnam Corp. v. Interstate Wrecking Co.,*
    66 N.Y.2d 38 (1985)……………………………....………………………...21

*Rozier v. Fin. Recovery Sys., Inc.,*
    2011 U.S. Dist. LEXIS 61307 (E.D.N.Y. 2011)……………………………19

*Sanchez v. Abderrahman,*
    2012 U.S. Dist. LEXIS 45661(E.D.N.Y. Mar. 30, 2012)…………………….24

*Sims v. First Consumers Natl. Bank,*
    303 A.D.2d 288 (1st Dep't 2003)………………………………………………21

*State of N.Y. v. Hendrickson Bros., Inc.,*
    840 F.2d 1065 (2d Cir. 1988)…………………………………………………...11

*Sykes v. Mel Harris & Assocs., LLC,*
    757 F. Supp. 2d 413 (S.D.N.Y. 2010)……………………………….11, 20, 23

*Thinesen v. JBC Legal Group, P.C.,*
    2005 U.S. Dist. LEXIS 21637, *1, *11 (D. Minn. Sept. 26, 2005)………….....15

*Tucker v. Mann Bracken, LLC,*
    2009 U.S. Dist. LEXIS 3962 (M.D. Pa. Jan. 21, 2009)…………………………10

*Wood v. Capital One Servs., LLC,*
    718 F. Supp. 2d 286 (N.D.N.Y 2010)…………………………………………19

**STATUTES AND RULES:**

Fed. R. Civ. P. 12……………………………………………………………1, 4, 6

Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et. seq.* ………………………………… *passim*

Fair Credit Reporting Act ("FCRA"), 18 U.S.C. 1681 *et seq.*. ………………………………… *passim*

New York GBL §349, *et. seq.* ………………………………………………………… *passim*

New York Judiciary Law §487. ………………………………………………………… *passim*

Plaintiff James LaCourte ("Plaintiff"), by and through his counsel, respectfully submits this Memorandum of Law opposing the joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the *First Amended Class Action Complaint* ("FAC"), dated February 27, 2013, filed by defendants NCO Group, Inc. n/k/a Expert Global Solutions, Inc. ("NCO"), NCO Financial Systems, Inc. ("NCOF") and Forster & Garbus LLP ("F&G").   NCO, NOCF and F&G collectively filed a single brief in support of their motion (Dkt. No. 40).

## INTRODUCTION

After he fully-settled and repaid a debt to American Express, NCO, NCOF and F&G barraged Plaintiff with at least twenty-nine debt collection letters and telephone calls. Were that not bad enough, from January 2011 through July 2012, NCO and NCOF instructed F&G to sue Plaintiff (in the name of American Express) for the same false debt.  Only when they thought they might get sued, for the first time in July 2012, did NCO and NCOF even bother to investigate whether Plaintiff owed the debt.  He did not, a fact they confirmed in a matter of hours (seventeen months too late).  Plaintiff continues to be injured by Defendants' conduct, as the false American Express debt continues to appear on his credit reports.

Remarkably absent from the motion filed by NCO, NCOF and F&G is any mention whatsoever of the debt collection policy manual extensively discussed in the FAC that forms the cornerstone of defendants' unlawful collection activities and the resulting harm done to Plaintiff. Rather, NCO, NCOF and F&G proffer a series of meritless defenses to Plaintiff's claim under the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), New York General Business Law ("GBL") §349 and New York Judiciary Law §487.  Even though refuted by Plaintiff's well-pled allegations in the FAC, many of these same defenses have failed in consumer claims against these same Defendants, or other like-minded debt collectors.

Plaintiff alleges that NCO, NCOF and is attorney affiliates, including F&G, collect on essentially "un-collectible" credit card debt by first harassing consumers and then by filing debt collection actions knowing full-well that most consumer do not appear to defend themselves. This is not by accident. The NCO and NCOF policy manuals dictate the very scheme alleged. Aside from their technical defenses, Defendants raise the *bona fide* error defense to Plaintiff's FDCPA claim. But these collection actions are not the result of a *bona fide* error. They are the result of a deliberate scheme precluding verification of the debt. Defendants cannot purposefully stick their heads in the sand and claim *bona fides*.

## PROCEDURAL HISTORY

Plaintiff filed this proposed class action on December 28, 2012, alleging claims under the FDCPA, FCRA, New York GBL §349, New York Judiciary Law §487 and RICO.  The original *Class Action Complaint* (Dkt. No. 1) was served on all named Defendants.  This Court held a scheduling conference on February 5, 2013.  In advance of the scheduling conference, parties prepared and submitted a *Report of the Parties' Planning Meeting Pursuant to Rule 26(f)* (Jan. 2013).  During the scheduling conference, this Court stayed discovery pending decision on Defendants' anticipated motions to dismiss.  Defendants filed motions to dismiss the *Class Action Complaint* on February 6, 2013.  Dkt. Nos. 27-32.  Plaintiffs' filed the FAC, superseding the original *Class Action Complaint,* on February 27, 2013.  The FAC retains all claims alleged in the Class Action Complaint, save for RICO, and adds New York civil conspiracy claims.

## STATEMENT OF FACTS

Plaintiff adopts and incorporates the Statement of Facts discussed in Plaintiff's memorandum of law opposing Chase's and OEP's motion to dismiss the FAC.

## STANDARD OF REVIEW

On a motion to dismiss, courts "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (internal citation omitted). "The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Palkovic v. Johnson*, 281 Fed. Appx. 63, 66 (2d Cir. 2008). Following the Supreme Court's decisions in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the district courts are still required to accept the allegations of the complaint as true and draw all factual inferences in the plaintiff's favor. *City of New York v. Beretta U.S.A. Corp.,* 524 F.3d 384, 392 (2d Cir. 2008) *cert. denied,* 129 S. Ct. 1579 (2009). *See also Holmes v. Poskanzer,* 2009 U.S. App. LEXIS 15976 (2d Cir. July 21, 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at *3 (*quoting Iqbal, quoting Twombly*).

## ARGUMENT

## I.   DEFENDANTS' SERIAL MOTION PRACTICE IS BARRED BY RULE 12(G)

Plaintiff's FAC contains most of the same claims and factual allegations pled in the original *Class Action Complaint* (Dkt. No. 1). Among those same claims are the violations of FCRA Section 1681s-2 and FDCPA, violations based on twenty-eight listed collection calls and letters and a lawsuit filed against Plaintiff in the New York State courts and Plaintiff's GBL §349 pecuniary injuries.[1] *Compare* Dkt. No. 1 ¶¶ 90-92 *with* FAC ¶¶ 210-212 (alleging same FCRA Section 1681s-2 claim); *compare* Dkt. No. 1 ¶¶ 14, 16, 108 *with* FAC ¶¶ 38, 43, 61 (alleging same debt collection dates and efforts); *compare* Dkt. No. 1 ¶20 *with* FAC ¶222 (among

---

[1]      A twenty-ninth collection call was identified on December 7, 2010, FAC ¶38, and NCOF sent another debt collection communication on March 1, 2012. Tusa Decl., Ex. B.

Plaintiff's pecuniary injuries were costs to defend *LaCourte Action*).   Defendants moved to

dismiss Plaintiff's original complaint.  Dkt. Nos. 29, 32.  Yet, those motions failed to make any

argument for dismissal of Plaintiff's FCRA claim for lacking a private cause of action, or the

argument that any of NCO's or F&G's debt collection efforts were beyond the FDCPA statute of

limitation or that Plaintiff waived his GBL §349 pecuniary injuries.  None of those defenses are

meritorious, as explained in Sections II.A, B and C *infra*.  However, all three arguments

appearing in Defendants' new motions[2] violate the prohibition of serial motion to dismiss

practice:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this
> rule must not make another motion under this rule raising a defense or objection
> that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g)(2).

Defenses that could have been made in a prior Rule 12 motion are waived.  "The Federal

Rule [12(g)] contemplates the presentation of an omnibus pre-answer motion in which defendant

advances every available Federal Rule 12 defense and objection he may have that is assertable

by motion."  *McCurdy v. American Bd. of Plastic Surgery*, 157 F.3d 191, 194 (3d Cir. 1998);

*Pilgrim Badge & Label Corp. v. Barrios,* 857 F.2d 1, 3 (1st Cir. 1998) (same); *Discovery Ortho*

*Ptnrs, LLC v. Osseous Techs. of Am., Inc.*, 2010 U.S. Dist. LEXIS 84161, *17, n.2 (S.D.N.Y.

Aug. 16, 2010).  Defendants' pending motions raise new arguments which had been available,

but were not made, in their original dismissal motions, and thus are waived.

## II.      PLAINTIFF ADEQUATELY PLEADS DEFENDANTS' FDCPA VIOLATIONS

The FDCPA protects consumers against both written and oral (telephone) violations of

the FDCPA.  *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 654 (S.D.N.Y. 2006).  The circuit

---

[2]      *See* Dkt. No. 40 at 9 (FCRA denies private claim), at 10-12 (FDCPA claims time-barred), at 16 (waiver of
GBL §349 injury); Dkt. No. 44 at (FCRA denies private claim).

4

courts uniformly apply the "least sophisticated consumer" standard to FDCPA claims, "ensur[ing] that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993).   Defendants NCO, NCOF and F&G challenge little of Plaintiff's FDCPA claims.  They no longer dispute that they are debt collectors or that Plaintiff is a consumer.  *See* FAC ¶¶ 11, 14, 36, 199, 200, FAC Exs. B, C, D (annexing debt collection letters to Plaintiff).  Nor could they:

> It is undisputed that Allen is a "consumer" NCO is a "debt collector," and the obligation owed to American Express is a "debt" as defined under the FDCPA. 15 U.S.C. §1692a(3), (5), (6). Thus, there is no question that the FDCPA applies.

*Allen v. NCO Fin. Sys., Inc*., 2002 U.S. Dist. LEXIS 10513, *8 (N.D. Ill. June 11, 2002); *accord Foti*, 424 F. Supp. 2d at 650, n.6 (no dispute that NCO is a debt collector that collects consumer debts subject to FDCPA).

NCO, NCOF and F&G do not dispute that Plaintiff has properly pled substantive violations of FDCPA Sections 15 U.S.C. §§ 1692c(a)(1), 1692c(a)(2), 1692c(b), 1692c(c), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(10), 1692e(13), 1692f and 1692f(1).  FAC ¶¶ 201-206.  Nor could they.  *See e.g.*, *Easterling v. Collecto, Inc*., 692 F.3d 229, 233-35 (2d Cir. 2012) (discussing 15 U.S.C. § 1692e violations); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 307 (2d Cir. 2003) (discussing 15 U.S.C. §1692f violations); FAC ¶¶ 38, 41, 49, 52, 56, 61, 142-144, 202-204; FAC, Ex. A.

Instead, they offer a few defenses that ignore Plaintiff's pleading.  For example, NCO, NCOF and F&G claim that Plaintiff has not alleged "any instance[]" where they contacted a third party to collect Plaintiff's debt, Dkt. No. 40 at 12, presumably (although not stated) disputing the FDCPA Section 1679c(b) claim, but ignoring that Plaintiff alleges NCO, NCOF and/or F&G called his employer to collect the false debt; FAC ¶61(l).  Although not necessary at

this stage, that allegation is demonstrated by NCO's and NCOF's own computer files produced by NCOF to Plaintiff.  FAC ¶55; Tusa Decl., Ex. B.   NCO, NCOF and F&G admit that Plaintiff alleges their debt collection calls were made at inconvenient hours and that they failed to properly identify themselves, Dkt. No. 40 at 12, but ask for a premature legal determination on that factual issue. Dkt. No. 40 at 12.   These same FDCPA violations are corroborated by investigating State Attorneys' General.  FAC ¶¶ 144, 204; FAC Ex. A at §6.2(e) and (l); Tusa Decl., Ex. D.  Moreover, NCO's, NCOF's and F&G's debt collection calls to Plaintiff are listed in their computer files, Tusa Decl., Ex. B, albeit without identifying the caller (or letter sender).[3]

NCO's, NCOF's and F&G's remaining FDCPA dismissal arguments contend that some (but not all) Plaintiff's FDCPA claims are untimely (and argument they waived pursuant to Fed. R. Civ. P. 12(g)).  They also proffer a *bona fide* error defense rejected by the Supreme Court and disputed by the FAC.   NCO briefly argues that it alone is not a debt collector, an argument it has lost in the courts.  NCO is a FDCPA debt collector.

A.      **DEFENDANTS ADMIT PLAINTIFF PLEADS A TIMELY FDCPA CLAIM**

This action was filed on December 28, 2012.  Dkt. No. 1.  Defendants' made a collection call demanding Plaintiff's false debt on December 29, 2011.  FAC ¶¶ 38, 61(dd).  In addition, NCO, NCOF and F&G maintained their debt collection lawsuit against Plaintiff until July 27, 2012, FAC ¶57, acknowledging as recently as January 4, 2012 that they persisted to collect a false debt without any "media" confirming validity of the debt.  FAC ¶ 51.  Those defendants further violated the FDCPA by furnishing false information to the credit bureaus concerning the false American Express debt that remains on Plaintiff's credit reports through 2013.  FAC ¶¶ 63-

---

[3]      NCO's computer files list times of day that are either the times of the computer entry or the time when the debt collection calls were made, a fact to be clarified during discovery.  If the times listed are the times when the debt collection calls were made, the document proves Plaintiff's FDCPA Section 1692c(a)(1) claims.  It is known some of the listed debt collection letters were sent by NCO/NOCF and others by F&G.  *See* FAC Exs. B, C.

65.   These collection efforts were all apart of a continuing pattern of more than twenty-nine collection letters and calls that began in October 2010 (after Plaintiff's American Express debt was fully settled and repaid) and that persisted until July 2012.   Some of those collection efforts occurred within the one-year FDCPA statute of limitations.   15 U.S.C. §1692k(d).   Others were equitably-tolled and part of a continuing harm that lasted until July 2012.

1.    **NCO, NCOF and F&G Concede that Plaintiff Pleads, and their Records Demonstrate, Debt Collection Within the One-Year FDCPA Statute of Limitations**

"A single violation of §1692e is sufficient to establish civil liability under the FDCPA." *Clomon*, 988 F.2d at 1318 (citing 15 U.S.C. §1692k).   Where multiple debt collector communications violate the FDCPA, each represents a separate claim.   *Puglisi v. Versus Debt Recovery Sol., LLC*, 2010 U.S. Dist. LEXIS 6120, *9-10 (E.D.N.Y. Jan. 26, 2010); *Ehrich v. RJM Acquisitions LLC*, 2009 U.S. Dist. LEXIS 113929, *8  (E.D.N.Y. Dec. 4, 2009).

Defendants concede that Plaintiff pleads a debt collection violation on December 29, 2011, within one year of the filing of this action.   Dkt. No. 40 at 2 ("most" of collection letters and calls claimed untimely); *Id*. at 4.[4]   During the course of the *LaCourte Action*, NCO and NCOF produced (in response to a subpoena) some of its computer files concerning theirs and F&G's efforts to collect the false American Express debt against Plaintiff.   FAC ¶¶ 44, 55. Those files list the December 29, 2012 debt collection call, after Plaintiff disputed the debt, orally and in writing, and after he had advised F&G, NCO and NCOF that he retained counsel. FAC ¶¶ 41, 52-56.   There is no dispute those FDCPA violations are timely pled.

2.    **False Information About Plaintiff's American Express Debt Was Furnished to the Credit Bureaus Within the FDCPA Statute of Limitations**

---

[4]      While they promise to challenge that allegation "in a subsequent motion," Defendants do not dispute the pleading of a timely FDCPA violation in their present motion.   Dkt. No. 40 at 2.

Debt collectors violate the FDCPA by furnishing false or inaccurate information concerning a consumer debt to the credit bureaus, each time the debt is reported.  *Purnell v. Arrow Fin. Serv., LLC.*, 303 Fed. Appx. 297 (6th Cir. 2008); *Brandon v. Financial Accounts Servs. Team*, 701 F. Supp. 2d 990, 995-96 (E.D. Tenn. 2010); *Judy v. Blatt, Hasenmiller, Leibsker, and Moore, LLC*, 2010 U.S. Dist. LEXIS 8027, *14 (N.D. Ill. Jan. 29, 2010). Plaintiff's credit reports continue to reflect false and inaccurate information concerning his American Express account, allegedly furnished by NCO, NCOF and/or F&G through 2012, or later.  FAC ¶¶ 63-65; *see also* Tusa Decl, Ex. F.[5]

### 3.      The *LaCourte Action* Included Timely FDCPA Violations

After Plaintiff disputed the alleged debt, and without having investigated or verified the legitimacy of the debt, NCO and NCOF instructed F&G to sue Plaintiff in the name of American Express.  FAC ¶¶ 41, 45, 46, 51.  That lawsuit was filed on January 17, 2011, and was prosecuted against Plaintiff until it was dismissed on July 27, 2012.  FAC ¶¶ 43, 57.  During the *LaCourte Action*, Plaintiff and his counsel appeared multiple times in 2012, within one-year of the filing of this action, at court-compelled conferences or hearings.  *See Judy*, 2010 U.S. Dist. LEXIS 8027 at *15 (court appearances to defend state court debt collection action were distinct from claims related to the wrongful filing of the action, and therefore not time-barred).

NCOF also produced discovery in the LaCourte Action that was actionable, and timely, under the FDCPA.  In response to a subpoena, FAC ¶55, NCO served another debt collection demand on Mr. LaCourte with its response on March 1, 2012, within a year of the filing of this action.  That March 1, 2012 NCOF response states:  "This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt

---

[5]       In their motion to dismiss Plaintiff's original complaint, NCO and F&G claimed not to have furnished any information concerning Plaintiff's American Express debt to the credit bureaus.  *See* Dkt. No. 32 at 6.   However, those claims are absent from their motion to dismiss the FAC.  *See* Dkt. No. 40 at 8-10.

collector." Tusa Decl., Ex. B. *See Campos v. Brooksbank*, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000) (efforts to collect debt during discovery in debt collection lawsuit was a separate, timely, FDCPA violation).

**4.      NCO, NCOF and F&G Engaged In a Deceptive Pattern of FDCPA Violations that Caused a Continuing Harm to Plaintiff and Tolled the Statute of Limitations**

Consistent with their written policies and procedures, beginning in October 2010, NCO, NCOF and F&G commenced a pattern of twenty-nine collection calls and letters that continued through a debt collection lawsuit that persisted and caused harm to Plaintiff until July 2012. The pattern of collection calls and letters were dictated by NCO's and NCOF's policy manuals, including the *Attorney Firm SOP*. That policy manual <u>required</u> repetitious abusive and harassing collection efforts on Plaintiff even after a lawsuit was filed, and even after Plaintiff disputed the debt and retained counsel. Collection activity by the NCO and NCOF law firm affiliates is expected to start immediately, even before the filing of any lawsuit, and to continue during the pendency of any filed lawsuits. FAC ¶81 (quoting *NCO Attorney Firm SOP*, *Appendix D: Attorney Network Work Standards*). Plaintiff was the victim of NCO, NCOF and/or F&G's debt collection calls and letters after he disputed the debt, orally and in writing, and after he retained counsel. FAC ¶¶ 38, 41, 56, 61.

The NCO *Attorney Firm SOP,* prohibited NCO network attorneys, like F&G, to investigate or verify the legitimacy of the claims forwarded by NCO and NCOF for debt collection. FAC ¶83. It prohibited NCO network law firms from requesting the creditor's backup documents, or "media." FAC ¶84. NCO and NCOF imposed that restriction even though they acknowledge that "media" is critical to verifying the veracity of any debt. FAC ¶85. The FTC and outside commentators confirm that, "collection[] agents cannot truthfully attest to the validity of the debt they're seeking to collect." FAC ¶86. Perhaps most disturbing, the NCO

*Attorney Firm SOP* forbids communications between the NCO network attorneys and its client creditor whom it supposedly represents in credit lawsuit.  See FAC ¶82 ("Section 4.2.1 of the *Attorney Firm SOP* clearly states:  "***All communications regarding accounts will be conducted between the Attorney Firm and NCO only***."   (Emphasis added)").  Appendix B of the *Attorney Firm SOP* further provides:

> NCO will interact directly with the Client. In some instances, attorneys may interact directly with the Client only after a request is made through NCO and the Client approves. **Only in urgent situations**, the firm, and a Client may make contact providing that NCO has also been informed of the situation. If a Client initiates contact with an Attorney Firm directly, the firm is responsible, for the purposes of inventory control and tracking, to notify NCO of the communication.
>
> In essence, the Attorney Firm's first point of contact is NCO. All statements, notices, information, etc. will go through NCO. [Emphasis in original].

FAC ¶83.  *See also* FAC ¶¶ 68, 69, 83.  When questioned about this provision of the *Attorney Firm SOP*, counsel for NCO, NCOF and F&G admitted the accuracy of Plaintiff's pleading:

> THE COURT:  …  Let me ask NCO.  This appears to say that the attorneys who are representing the creditor, that is, the plaintiff in the state action, that those attorneys are not to interact with the creditors, is that right?  Is that what it says? I'm asking defense counsel.
>
> MR. SCHULTZ:  Your Honor, I believe that's a fair reading of what this says.

2/5/13 Hearing Tr. at 13:11 to 15:1 (annexed as Tusa Decl., Ex. C).[6]

When a debt collector begins a pattern of collection activity outside the FDCPA one-year statute of limitations and finishing within one-year of filing, the continuing harm and equitable tolling and doctrines each render all the collection communications actionable.  The application of the continuing harm doctrine to a pattern of FDCPA violations was addressed in *Tucker v. Mann Bracken, LLC*, 2009 U.S. Dist. LEXIS 3962 (M.D. Pa. Jan. 21, 2009)).  In *Tucker*, as here, the *Tucker* court found that some of the alleged FDCPA violations were unquestionably timely.

---

[6]     Defendants' motions to dismiss make no reference to have taken any steps to address the Court's concerns.

*Id*. at *9. As for the earlier calls and letters, *Tucker* held that they were timely and actionable under the continuing harm (or continuing violations) doctrine:

> By pleading the receipt of telephone calls within the limitation period of §1692k that are part of a continuing pattern of conduct, Plaintiffs have satisfied the requirements for pleading a continuing violation. *See McAleese [v. Brennen]*, 483 F.3d., [206] at 218 [3d Cir. 2007]. Therefore, Plaintiffs' FDCPA claims arising from conduct occurring prior to September 7, 2007 are not barred by the limitation period of §1692k(d) because they are alleged to be part of a continuing violation. …

*Id*. at *10-12.  *See also Lennon v. Penn Waste, Inc*., 2009 U.S. Dist. LEXIS 93690, *4-5, n.3 (M.D. Pa. Oct. 7, 2009)  ("While the statute of limitations for FDCPA claims expires one year from the date of violation, see 15 U.S.C. §1692k(d), the limitations period may be tolled when an FDCPA claim presents a continuing violation.") (citing *Tucker*); *Gruen v. Edfund & Van Ru Credit Corp*., 2009 U.S. Dist. LEXIS 60396, 6-7 (N.D. Cal. July 15, 2009) (same).

The FDCPA is also subject to tolling due to fraudulent concealment.  *Sykes v. Mel Harris & Assocs*., LLC, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) ("The Complaint plausibly alleges that equitable tolling applies, as to most of the plaintiffs' FDCPA claims.").  A statute of limitations is tolled for fraudulent concealment when, (1) the defendant concealed the existence of a cause of action; (2) a plaintiff remained ignorant of his cause of action until some a time within the statute of limitations; and (3) his continuing ignorance was not attributable to lack of diligence on his part. *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988).

While Plaintiff did inform NCO, NCOF and F&G that they were mistaken in their collection efforts, he was entirely and resonably unaware of Defendants' written and standardized policies and procedures to engage in deceptive conduct and violations of the FDCPA.  FAC ¶193.  Once he learned the existance and extent of Defendants' unlawful acts,

Plaintiff dilligently filed this action.  FAC ¶196.  Defendants' fraudulent concealment tolled any acts outside the statute of limiations.  FAC ¶197.

Plaintiff has plausibly alleged each element to invoke the continuing harm, equitable tolling and fraudulent concealment doctrines.  As a result, in addition to the admittedly timely FDCPA violations, and Defendants' other collection efforts performed within one-year of the filing of this action, all Defendants' collection letters, telephone calls and litigation efforts alleged in the FAC are actionable and timely.

**B.   NCO, NCOF AND F&G FAIL TO PROVE THEIR *BONA FIDE* ERROR DEFENSE**

NCO, NCOF and F&G admit that for seventeen months, and on more than twenty-nine occasions, they attempted to collect a false debt from Plaintiff, then sued him to collect that same false debt.  In the face of Plaintiff's repeated denials, Defendants made no efforts either to investigate or verify that the debt was valid before engaging in their collection efforts.   FAC ¶¶ 51, 58.  Yet, their motion to dismiss asserts just because they were wrong about the legitimacy of Plaintiff's debt, their "mistake" cannot translate into FDCPA violations. Dkt. No. 40 at 13-14.  This is the *bona fide* error defense that Defendants have raised in defense to Plaintiff's FDCPA claims.  *See Report of the Parties' Planning Meeting Pursuant to Rule 26(f)* (Jan. 29, 2013) at 3.[7]

Whether Defendants knew they were collecting a false debt is irrelevant.  The FDCPA is a strict liability statute.  *Ellis v. Solomon & Solomon, P.C.,* 591 F.3d 130, 135 (2d Cir. 2010) ("The Act 'is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages.'") (*quoting Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993)); *see also Easterling*, 692 F.3d at 235 (debt collection letters that are "literally false," as here, violate the FDCPA Section 1692e).   Equally unavailing is the

---

[7]   Although not properly limited by NCO, NCOF and F&G, their *bona fide* error defense logically extends only to Plaintiff's FDCPA Section 1692e and 1692f claims.  That defense bears no relation to NCO's, NCOF's and F&G's FDCPA Sections 1692c or 1692d violations.

contention that any Defendant did not intent to violate the FDCPA. *Ellis,* 591 F.3d at 135 ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector."). The defense raised by NCO, NCOF and F&G is often rejected:

> While the DCDs aver that they simply sought and collected what they believed to be valid bills, the FDCPA is a strict liability statute and a consumer need not show intentional violation of the Act by a debt collector to be entitled to damages. *Allen v. LaSalle Bank,* 629 F.3d 364, 368 (3d Cir. 2011); *Gryzbowski v. I.C. System,* Inc., 691 F. Supp. 2d 618, 622 (M.D. Pa. 2010). Thus, regardless of their intent, as a matter of law, the DCDs violated the FDCPA when they falsely represented the amount of money the Plaintiffs owed and when they collected amounts in excess of what the Plaintiffs were legally obligated to pay.

*Agostino v. Quest Diagnostics, Inc.,* 2011 U.S. Dist. LEXIS 127904, *14 (D.N.J. Nov. 3, 2011).

The Supreme Court recently resolved application of the *bona error* defense. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 130 S. Ct. 1605 (2010). In order to carry the burden that the debt collector made an "error" that would exempt it from FDCPA liability, a debt collector must "show[] by a preponderance of evidence that the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 130 S. Ct. at 1606. Further, the debt collector is required to prove a series of orderly, internal controls specifically designed to avoid mistakes. *Id.* at 1615. Not only is this a factual issue that cannot be resolved on a motion to dismiss, NCO, NCOF and F&G have not even attempted to carry their heavy evidentiary burden.[8]

The FAC extensively alleges that NCO's, NCOF's and F&G polices and agreements codify procedures to promote (rather than prevent against) FDCPA violations. FAC ¶¶ 68-89. This lack of internal quality controls is corroborated by the repetitive, and recent, findings by

---

[8]    Nor is it appropriate to make this factual determination on a motion to dismiss. *See Bank v. Cooper*, 2009 U.S. Dist. LEXIS 47544, 2009 WL 1491227, at *5 (E.D.N.Y. May 27, 2009) (noting that whether the violation resulted from a *bona fide* error is an issue of fact), *aff'd*, 356 F. App'x 509 (2d Cir. 2009); *see also Sussman v. I.C. Sys.*, 2013 U.S. Dist. LEXIS 31721, *21 (S.D.N.Y. Mar. 6, 2013).

state regulators that NCO, NCOF and F&G routinely and often violate the FDCPA.  FAC ¶¶ 142-153, FAC Ex. A; Tusa Decl., Ex. D (March 2010 Assurance of Discontinuance with New York Attorney General; "The OAG also has determined that NCO has collected, or attempted to collect, debts in ways that violate federal and state laws.").

Relying principally on *Hasbrouck v. Arrow Fin. Servs. LLC*, 2011 U.S. Dist. LEXIS 53928 (N.D.N.Y May 19, 2011), NCO, NCOF and F&G claim that some portion of their FDCPA violations, those surrounding their filing of the *LaCourte Action*, should qualify as a *bona fide* error.  *Hasbrouck* provides Defendants with scant support.  First, it was a summary judgment decision that followed the debt collector's failed motion for judgment on the pleadings. *See Hasbrouck v. Arrow Fin. Servs. LLC*, 2010 U.S. Dist. LEXIS 29564 (N.D.N.Y Mar. 26, 2010).  Second, a key factual distinction from the perspective of the *bona fide* error defense is that the *Hasbrouck* plaintiff owed the claimed debt, meaning the debt collector had not collected on a false debt in violation of the FDCPA Sections 1692e or 1692f.  *Hasbrouck*, 2011 U.S. Dist. LEXIS 53928 at *12-13.  The other decisions cited by Defendants are similarly distinguishable. *See Harvey v. Great Seneca Fin. Corp*., 453 F.3d 324, 332 (6th Cir. 2006) ("Harvey never denied in her complaint that she owed Seneca a debt.") (Dkt. No. 40 at 13).

The language of FDCPA Section 1692k(c) clearly places the burden on defendant to show both that its violation was unintentional and that it maintained procedures reasonably adapted to avoid the error.  *See Jenkins v. Heintz,* 124 F.3d 824, 834 (7th Cir. 1997); *Bank*, 2009 U.S. Dist. LEXIS 47544 at *11-12.  Defendants fail to carry that burden, which in any event is premature for consideration at this early stage of this action.

## C.    NCO IS A DEBT COLLECTOR

NCO briefly suggests that because it operates though its subsidiaries, it cannot be a debt collector.  Dkt. No. 40 at 1, 7.[9]  NCO has unsuccessfully raised this defense before.  *See Thinesen v. JBC Legal Group, P.C.*, 2005 U.S. Dist. LEXIS 21637, *1, *11 (D. Minn. Sept. 26, 2005) (denying NCO's motion to dismiss FDCPA claims;  "The Court also finds that Defendants [including NCO Group] likely violated the FDCPA by threatening litigation on a time-barred debt.");  *Hrivnak v. NCO Portfolio Mgmt*., 723 F. Supp. 2d 1020, 1021 (N.D. Ohio 2010) (discussing unsuccessful NCO motion to dismiss claims prior to removal).

The definition of a "debt collector" under the FDCPA is extremely broad, and includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6). The FDCPA does not exempt holding or parent companies of debt collectors from liability.  *Sykes*, 757 F. Supp. 2d at 422-423 (arguments by "Leucadia defendants" parent and holding companies that they were not debt collectors denied on motion to dismiss); *Herkert v. MRC Receivables Corp*., 655 F. Supp. 2d 870, 880-81 (N.D. Ill. 2009) (rejecting a holding company's argument that it could not be considered a debt collector because it was not directly involved in the collection activities pertaining to the case); *Miller v. Midland Credit Mgmt, Inc*., 621 F. Supp. 2d 621, 635 (N.D. Ill. 2009) (finding that a holding company's SEC filings sufficiently documented its activities as a debt collector).[10]

---

[9]        NCO offers no legal argument, case law or facts in support of this passing defense.

[10]       This same analysis applies to OEP as NCO's and NCOF's parent company, and to Chase as OEP's, NCO's and NCOF's ultimate parent company.  NCO, OEP and Chase are also vicariously liable for NCO's and NCOF's FDCPA violations.  This argument is contained in Plaintiff's accompanying brief opposing Chase's and OEP's motion to dismiss, and is incorporated and adopted herein as it applies to NCO.

Plaintiff alleges NCO is a debt collector.  FAC ¶11.  In fact, it is the largest debt collector in the country.  FAC ¶90. As in *Miller*, NCO takes credit in SEC filings for debt collection activities of its subsidiaries.[11] Its 2010 Form 10-K also boasts that NCO, "operates 'Attorney Network Services' through which NCO 'coordinate[s] and implement[s] legal collection solutions undertaken on behalf of our clients through the management of nationwide legal resources specializing in collection litigation. Our collection support staff manages the attorney relationships and facilitates the transfer of necessary documentation.'"   FAC ¶68.   The "collection litigation" performed by NCO's Attorney Network Services division uses the NCO *Attorney Firm SOP,* discussed throughout the FAC as a cornerstone of Defendants' FDCPA violations.  *See e.g.,* FAC ¶¶ 75-77, 79-84, 106. There is no doubt that the debt collection litigation touted in NCO's SEC filings is subject to FDCPA scrutiny.  *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Goldman v. Cohen,* 445 F.3d 152, 155 (2d Cir. 2006) (*quoting* 15 U.S.C. ß 1692a(2))*; Miller v. Upton, Cohen & Slamowitz,* 687 F. Supp. 2d 86, 96 (E.D.N.Y. 2009).   NCO is a debt collector as defined by the FDCPA.

### III.    PLAINTIFF PLEADS A CLAIM FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

Plaintiff's FCRA claims against Defendants are based on their violations of 15 U.S.C.§1681s-2(b), which provides for a private right of action against a "data furnisher." NCO, NCOF and F&G do not deny that they are "data furnishers" to credit reporting agencies or that they furnished data concerning Plaintiff's American Express debt to a credit reporting agency. Plaintiff alleges that NCO, NCOF and/or F&G furnished negative information to credit reporting

---

[11]    *See* NCO 2010 Form 10-K at 1 ("We currently have approximately 32,900 full and part-time employees (including approximately 2,100 non-employee personnel utilized through subcontractors) who provide our services through our network of over 100 offices in 11 countries. We also have employees who work in "virtual" offices out of their homes."); *Id*. at 6 ("We provide a wide range of ARM [Accounts Receivables Management *i.e.* debt collection] services to our clients by utilizing an extensive technological infrastructure.").

agencies concerning his American Express account, FAC ¶213, that Plaintiff has disputed the inaccurate information, FAC ¶¶ 52-54; and that Defendants have acknowledged that Plaintiff did not owe the alleged debt, FAC ¶57, but have failed to correct inaccurate information furnished to credit reporting agencies concerning Plaintiff's American Express account.  FAC ¶213.

A consumer has "a private right of action under § 1681s-2(b), ... if [s/he] can demonstrate that ...  the furnisher of the allegedly false information [] received notice from a consumer reporting agency of the dispute." *Josey v. Sallie Mae, Inc.*, 2009 U.S. Dist. LEXIS 72157, *20 (S.D.N.Y. Aug. 17, 2009) (citation omitted).  Once a data furnisher has received notice of "a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the FCRA requires the data furnisher to "conduct an investigation with respect to the disputed information .... [and] report the results of the investigation to the consumer reporting agency," and "if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation," the data furnisher shall modify, delete or "permanently block the reporting of that item of information." *Id*. at 21 citing 15 U.S.C. §1681s-2(b)(1)(A), (C), (E).   Indeed, "[d]ata furnishers who fail to take the appropriate action upon notification may be held liable to consumers for negligent or willful non-compliance in an amount equal to the 'actual damages sustained,' 'the costs of the action' and reasonable attorney's fees, as well as punitive damages in the case of willful noncompliance.'" *Id*., citing 15 U.S.C. §§ 1681n,o.  Here, Plaintiff can demonstrate that as of February 8, 2013, a credit reporting agency, Experian, notified furnishers of Plaintiff's January 25, 2013 dispute concerning his American Express account.  *See* Tusa Decl., Exs. E, F (annexing dispute letter, excerpted Experian credit report and Experian response letter).[12]  That dispute references the

---

[12]     As demonstrated by these exhibits, Plaintiff has been diligent in his demands to learn the dates and names of all furnishers of the false and inaccurate Amex account information listed in his credit reports.  While he has

result of the *LaCourte Action*, information uniquely available to NCO, NCOF and F&G:

> Defendants are in the business of attempting to collect debts. They ultimately make a public record of the outcome of their work and it is expected that this information will be used by Credit Reporting Agencies. They have a duty to make a reasonable effort to get the information right, to avoid the harm to innocent, similarly named parties.

*Lindor v. Forster & Garbus, LLP*, 914 N.Y.S.2d 867, 874-75 (N.Y. Sup. Ct., Kings. Co. 2010)

Defendants have acknowledged that Plaintiff did not, and does not, owe the alleged American Express debt, yet they have done nothing to correct the reporting of this false and inaccurate information on Plaintiff's credit reports.  FAC ¶¶ 57, 213.  Defendants offer only a non-responsive defense, disputing the timing when it is alleged NCO and NCOF could have first furnished information to the credit reporting agencies.  Even that timing defense is wrong.  NCO and/or NCOF first obtained Plaintiff's American Express account on December 18, 2008.  *See* Tusa Decl, Ex. B (annexing a "Fact Sheet" confirming the date of their initial receipt of Plaintiff's account to NCOF's March 1, 2012 debt collection communication).

Plaintiff has stated a claim for violation of the FCRA.

## IV.   PLAINTIFF HAS SUFFICIENLY PLED A NEW YORK GBL §349 CLAIM

A *prima facie* GBL §349 violation is stated by pleading three elements:  1) the challenged act or practice was directed at a consumer; 2) the defendant's acts were deceptive in a material way; and 3) the plaintiff was injured as a result of the defendant's misleading acts.  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 25-26 (1995).  A single violation is sufficient to trigger a GBL §349 violation.  *Id.* at 25**.**  Likewise, "it is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead

---

learned sufficient details to sustain his FCRA claim, the remaining factual details are outside his control and will be learned after additional discovery.  These exhibits demonstrate the factual inquiries raised by Defendants that cannot be resolved on the present motion.

....").  *Id*. at 26.  Neither does GBL §349 require a plaintiff to prove actual or justifiable reliance.
*Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005).

NCO, NCOF and F&G contend that Plaintiff has not alleged their debt collection practices were consumer oriented.  That is clearly wrong.  FAC ¶221.  They further argue their admitted twenty-nine attempts to collect a false debt, and the prosecution of a lawsuit against Plaintiff to collect that same false debt, were not deceptive practices, and did not cause plaintiff pecuniary injuries.  Dkt. No. 40 at 15.[13]  Defendants are incorrect and do not make even attempt to respond to the FAC's specific recitations of their deceptive conduct.  FAC ¶¶ 49, 219(a) – (l). Defendants' characterization of Plaintiff's individual Section 349 claim as relating only to litigation misconduct is incorrect.  Plaintiff alleges non-litigation violations from the (at least) twenty-nine letters and telephone calls demanding collection of a false debt and furnishing or failing or correct false information to credit bureaus.  *See* FAC ¶¶ 38-42, 51, 59-61, 65, 66, 88, 89, 219.  At best, NCO's, NCOF's and F&G's motion challenges only a single claim of deceptive conduct, pled in FAC ¶219(f).

Contrary to Defendants' unsupported contention, courts have consistently held that deceptive and unlawful debt collection practices violate GBL §349.  In *Wood v. Capital One Servs., LLC,* 718 F. Supp. 2d 286 (N.D.N.Y 2010), in which NCOF was a defendant, the court held that allegations relating to a deceptive and misleading debt collection letter stated a claim under GBL §349.  *Id*. at 292.  *See also Rozier v. Fin. Recovery Sys., Inc*., 2011 U.S. Dist. LEXIS

---

[13]       Defendants have not opposed, and therefore concede, that Plaintiff has stated his Section 349 for non-pecuniary injuries. FAC ¶225; s*ee Oswego Laborers*, 85 N.Y.2d at 26  ("a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm.");  *McGill v. GMC*, 231 A.D.2d 449, 450 (N.Y. App. Div. 1st Dep't 1996) ("The statute does not require an [] showing of actual pecuniary harm [].");  *Wood v. Capital One Servs., LLC*, 718 F. Supp. 2d 286, 288, 292 (N.D.N.Y 2010) ("humiliation, anger, anxiety, emotion distress, fear, frustration and embarrassment" were injuries recognized by GBL §349(h) when defendant sent letter demanding plaintiff pay a delinquent loan that was not delinquent;  *Bose v. Interclick, Inc.*, 2011 U.S. Dist. LEXIS 93663 (S.D.N.Y. Aug. 17, 2011) (permitting GBL§349 claim for non-pecuniary, privacy violations).

61307 (E.D.N.Y. 2011) (denying motion to dismiss GBL §349 claim involving misleading debt collection communication); *Ellis v. Cohen & Slamowitz*, LLP, 701 F. Supp. 2d 215 (N.D.N.Y 2010) (same).  Even to the extent Plaintiff's claims relate to misuse of the court system, they nonetheless state claims under GBL §349.  In *Sykes*, 757 F. Supp. 2d at 428, Judge Chin denied a motion to dismiss the plaintiffs' GBL §349 claim relating to the defendants' practices of filing deceptive debt collection lawsuits.

Defendants also claim that Plaintiff has not adequately alleged his pecuniary injuries.  As an initial matter, Plaintiff's injuries are not limited to costs incurred to defend the *LaCourte Action*.  In addition to those compensable costs, FAC ¶52, Plaintiff alleges injuries deriving from his dispute of the Defendants' false debt collection claims, to correct his false credit reports, and having been denied less-expensive credit as a result of the inaccurate Amex account information in his credit reports.  FAC ¶¶ 52, 67, 222, Tusa Decl. Ex. F (annexing postage receipt).  So long as Plaintiff incurred any "actual injury," regardless of the amount, and including non-pecuniary injuries, GBL §349h provides Plaintiff with a statutory remedy of the his actual injuries or $50.00, whichever is greater.  The statute also expressly authorizes injunctive remedies.  GBL §349(h); *Charrons v. Pinnacle Group NY LLC*, 269 F.R.D. 221, 233 (S.D.N.Y. 2010).

To the extent Plaintiff's alleged injuries derive from his defense of the *LaCourte Action*, he has not waived those damages.  The *Stipulation of Voluntary Dismissal* agreeing to the dismissal of the action "without costs to either party against the other" was made only with American Express.  Defendants cite no authority for the proposition that by agreeing to not seek costs only against another unrelated party, in a particular proceeding, a party waives the right to recover those costs against other, liable parties in a separate proceeding.  Defendants have failed to demonstrate (nor could they) that any of them were intended beneficiaries of the *Stipulation of*

*Voluntary Discontinuance.*  *See Consol. Edison, Inc. v. Ne. Utilities*, 426 F.3d 524, 528 (2d Cir. 2005) ("'To create a third party right to enforce a contract, "the language of the contract" must "clearly evidence[] an intent to permit enforcement by the third party."'" (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co*., 66 N.Y.2d 38, 45, (1985)).

Lastly, "[w]hether defendants' conduct was deceptive or misleading is a question of fact," that is generally inappropriate for resolution on a motion to dismiss. *Sims v. First Consumers Natl. Bank*, 303 A.D.2d 288, 289-90 (1st Dep't 2003) (reversing dismissal of GBL §349 claim); *see also Goldman v. Simon Prop. Group, Inc.*, 58 A.D.3d 208, 213 (2d Dep't 2008); *Negrin v. Norwest Mtge., Inc*., 263 A.D.2d 39, 50 (2d Dep't 1999).  Plaintiff thus has sufficiently stated his claim for Defendants' violations of New York GBL §349.

## V.   PLAINTIFF HAS STATED A CLAIM AGAINST DEFENDANT FORSTER & GARBUS FOR VIOLATION OF THE NEW YORK JUDICIARY LAW §487

Plaintiff has stated a claim against F&G for violation of the New York Judiciary Law §487 based on a scheme between Defendants NCO and/or NCOF and its law firm affiliate network, including Defendant F&G, to initiate frivolous debt collection lawsuits against consumers en masse when Defendants know, or reasonably should know and intentionally fail to know, that the debt is not owed by the consumer in whole or in part.  The end goal of this scheme is to turn non-existent, or otherwise un-collectable, consumer debt into debt collection lawsuits that threaten consumers, and ultimately obtain quick settlements or default judgments through abuse and manipulation of the court system.  Integral to this scheme is the NCO *Attorney Firm SOP* manual which instructs the law firm affiliate network, *inter alia*, as follows:

• NCO and NCOF expect that all accounts forwarded to their affiliate law firms will result in a suit decision, *i.e.*, a default judgment against the consumer, within 30 -60 days from the date of placement with the affiliated law firm.  FAC ¶79.

21

• Affiliate law firms are not paid unless, and until, they obtain a judgment or settlement against the consumer.  FAC ¶80.

• Affiliate law firms are not permitted to communicate with the creditors, even though those same creditors are the nominal plaintiffs in the lawsuits filed.  FAC ¶¶ 82, 83.  With respect to this requirement of the NCO Attorney Network Standard Operating Procedure manual, this Court has found "a violation by the attorneys involved, if they followed these instructions, of the most elementary rules of ethics governing attorneys" and was "extremely doubtful that that arrangement complies with the ethical rules of the State of New York."   Transcript of the Rule 16 Conference dated February 5, 2013, at 13:12-14;14:15-17.

• Affiliate law firms are prohibited from requesting the underlying creditor documents which are necessary to confirm the validity of the debt which is the subject of the law suits.  FAC ¶84.  Indeed, as of January 4, 2012, nearly one year after the frivolous debt collection lawsuit had been commenced against Plaintiff by F&G, neither NCO, NCOF nor F&G had received any "media" concerning the debt allegedly owed by Plaintiff.  FAC ¶51.

Despite F&G' lack of knowledge of the alleged underlying debt, and its agreement with Defendants NCO and/or NCOF, (1) not to obtain any of the underlying documents necessary to determine whether the alleged debt was in fact valid; and (2) not communicate with the nominal plaintiff creditor, F&G signed the Complaint in the debt collection lawsuit brought against Plaintiff pursuant to the New York Rules of the Chief Administrator, Part 130-1.1.  In doing so, F&G thus certified, falsely, that, "to the best of that person's knowledge, information and belief formed after an inquiry reasonable under the circumstances, (1) the presentation of the paper of the contentions therein are not frivolous as defined in section 130-1.1(c) of this Subpart, and (2) where the paper is an initiating pleading, (i) the matter was not obtained through illegal conduct,

or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom, and (ii) the matter was not obtained in violation of 22 NYCRR §1200.41a." FAC ¶50.

New York Judiciary Law §487 provides that "any attorney who has engaged in 'any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party' is guilty of a misdemeanor and liable for damages." *Sykes*, 757 F. Supp. 2d at 428-29 (citing N.Y. Jud. L. §487). By commencing frivolous debt collection lawsuits against consumers at the direction of NCO and/or NCOF, with no knowledge of the validity of the underlying debt, and agreeing not to seek or obtain such knowledge, or even communicate with the nominal creditor plaintiff, F&G has violated New York Judiciary Law §487.

In *Sykes*, the plaintiffs alleged a similar scheme in which a debt-buying company, a law firm, and a process service company engaged in a "massive scheme" to fraudulently obtain default judgments against consumers in state court for debts which they did not owe, in whole or in part. [cites?] The *Sykes* plaintiffs alleged that the debt buyer had limited proof to substantiate the claims against the consumers "because it typically did not purchase documentation of the consumers' indebtedness to the original creditors" but that law firm defendant nevertheless filed documents with the courts, including thousands of signed affidavits, attesting to personal knowledge that the debt in each collection action was valid. Judge Chin held that these allegations stated a claim against the law firm defendant for violating Judiciary Law Section 487. *Sykes*, 757 F. Supp. 2d at 428-29 ("Plaintiffs' allegations regarding the fraudulent affidavits and other [court] filings provide adequate support for this claim against the Mel Harris [law firm] defendants. Thus, the Mel Harris defendants' motion to dismiss the Judiciary Law claim is denied.").

In *Diaz v. Portfolio Recovery Assocs., LLC,* 2012 U.S. Dist. LEXIS 72724, 16-17 (E.D.N.Y. May 23, 2012), the plaintiffs alleged violation of the New York Judiciary Law §487 and the FDCPA based on a similar scheme of the defendant debt buyer and defendant law firm to initiate lawsuits en masse against consumers in order to collect on otherwise time barred debt by obtaining default judgments.  The Eastern District of New York held that plaintiffs' "allegations of a 'broad pattern of deceptive filings' were sufficient to support a claim under Section 487."

F&G argues that Plaintiff is precluded from asserting violation of the New York Judiciary Law §487 in this proceeding because he was aware of and failed to raise this claim in the state court action brought against him, nominally, by Amex.  Defendant is wrong. While Plaintiff knew that he himself did not owe the Amex debt claimed, there is no evidence that Plaintiff also was aware during the pendency of the state court action of the larger debt collection scheme among the many Defendants herein who were not named parties in the state court action and from which F&G' violation of Judiciary Law §487 arises.   In contrast, in *Sanchez v. Abderrahman*, 2012 U.S. Dist. LEXIS 45661, 34-35 (E.D.N.Y. Mar. 30, 2012), on which F&G relies, the plaintiffs alleged violation of the N.Y. Judiciary Law § 487 based on allegations of "sewer service" in a contemporaneous state court lawsuit brought against them, and in which they had moved to dismiss for lack of jurisdiction based on the same improper "sewer service." The Eastern District of New York thus found the *Sanchez* plaintiffs' "dates of their motions to dismiss in state court, make clear that they were aware of the alleged violations at the time they occurred," that "the state court action is still pending" and that "[a]ccordingly, plaintiffs remedy is to bring their §487 claim in that proceeding." *Id.*[14]  But even if Plaintiff had been aware of this

---

[14]    *Seldon v. Bernstein*, 2010 U.S. Dist. LEXIS 96989, *1-2 (S.D.N.Y. Sept. 16, 2010), on which Defendant F&G relies, also found clear evidence that the plaintiff, Seldon, was well aware during the pendency of a libel suit brought against him in state court of the actions of the lawyer defendant, Bernstein, which gave rise to his N.Y. Judiciary Law §487 violation, namely, the alleged false statements Bernstein made to the jury during closing

claim during the *LaCourte Action*, the jurisdictional limit of the state district court would have been exceeded had Plaintiff asserted his class claims in that action.  *See* NY CLS UDCA §§ 201, 202, 208.  Thus, it was not possible for Plaintiff to have brought this claim in the state court debt collection lawsuit, even if he had been aware that time.

F&G also argues, incorrectly, that Plaintiff has failed to allege "intentional behavior" on the part of F&G.  Plaintiff has plainly alleged intentional behavior on the part of F&G to commence frivolous and harassing debt collection litigation against consumers irrespective, and without any knowledge, of the validity of the underlying debt, as well as its intent not to confirm the validity of the debt, but rather to extract quick settlements or default judgments, as evidenced by the NCO *Attorney Firm SOP* manual.  Plaintiff has stated a claim against F&G for violation of the New York Judiciary Law §487.

***

Plaintiff adopts and incorporates by reference all arguments made in his brief opposing the motion to dismiss filed by Chase and OEP as applicable to NCO, NCOF and F&G.

**CONCLUSION**

For each of the foregoing reasons, and those in the accompanying brief opposing JPMC's and OEP's motion to dismiss, Defendants' Motions to Dismiss the *First Amended Class Action Complaint* should be DENIED in their entirety.  To the extent this Court grants any portion of Defendants' motions, Plaintiff requests the right to amend as to those issues and/or claims.

---

argument, and that therefore, Seldon was precluded from bringing this claim in a separate federal court action. There is no such evidence here of Plaintiff's knowledge and awareness during the state court action brought against him by Amex of the larger NCO and NCOF debt collection litigation scheme.

DATED: March 22, 2013

**TUSA P.C.**

/s/ Joseph S. Tusa_____
Joseph S. Tusa
1979 Marcus Avenue, Ste. 201
Lake Success, NY  11042
Tel. (516) 622-2212
Joseph.tusapc@gmail.com

**GISKAN SOLOTAROFF ANDERSON**
 **& STEWART LLP**

/s/ Catherine E. Anderson_____
Catherine E. Anderson
Oren Giskan
Jason Solotaroff
11 Broadway, Ste. 2150
New York, New York 10004
Tel. (212) 847-8315
canderson@gslawny.com
ogiskan@gslawny.com
jsolotaroff@gslawny.com