```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
JAMES LACOURTE,                         :
                                        :       12 Civ. 9453 (JSR)
        Plaintiff,                      :
                                        :       MEMORANDUM
                                        :
        -v-                             :
                                        :
JP MORGAN CHASE & CO., NCO GROUP,       :
INC., ONE EQUITY PARTNERS, FOSTER &     :
GARBUS LLP, DOES 1 THROUGH 150, and     :
NCO FINANCIAL SYSTEMS, INC.,            :
                                        :
        Defendants.                     :
----------------------------------------x
```



JED S. RAKOFF, U.S.D.J.

Plaintiff James LaCourte brings this putative class action against JP Morgan Chase & Co. ("JPMC"), One Equity Partners ("OEP"), NCO Group Inc. ("NCO Group"), NCO Financial Systems, Inc. ("NCO Financial"), Foster & Garbus LLP ("Foster & Garbus"), and Does 1 through 150, asserting claims under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., section 349 of the New York General Business Law ("NYGBL"), section 487 of the New York Judiciary Law ("NYJL"), and common-law civil conspiracy. The defendants previously filed motions to dismiss the First Amended Complaint ("FAC") in its entirety, which this Court granted in part and denied in part. In particular, this Court dismissed all claims in the FAC except for (1) certain FDCPA claims against NCO Financial and Foster & Garbus arising out of a debt collection phone call allegedly placed to LaCourte's home on December 29, 2011, (2) the

1

NYJL claim against Foster & Garbus, and (3) the claim for civil conspiracy to violate the NYJL against NCO Financial and Foster & Garbus. See Order, Apr. 25, 2013; Memorandum & Order, Sept. __, 2013. With leave of Court, LaCourte then filed a Second Amended Complaint ("SAC"), which adds new allegations supporting LaCourte's previously dismissed claims against NCO Group, as well as four new FDCPA claims. Defendants then moved to dismiss these new and renewed claims. By "bottom-line" order dated July 19, 2013, the Court granted that motion in full. This Memorandum explains the reasons for that ruling.

Referring to the Memorandum and Order of September 4, 2013, the Court presumes familiarity with the basic facts and background of this case. In the SAC, LaCourte adds four categories of new allegations against NCO Group supporting his direct and vicarious liability claims against that defendant. First, the SAC quotes extensively from the 2010 form 10-K filed by NCO Group and its subsidiaries with the Securities and Exchange Commission, which describes the companies' debt collection operations and services, including their management of a nationwide network of attorneys. See, e.g., SAC ¶ 113 ("We coordinate and implement legal collection solutions undertaken on behalf of our clients through the management of nationwide legal resources specializing in collection litigation." (quoting NCO Group, Inc., Annual Report (Form 10-K) (Mar. 31, 2011)). Second, the SAC alleges that NCO Group maintains a website that advertises that NCO Group provides debt collection

services for creditors. SAC ¶¶ 116-18. Third, the SAC alleges that NCO Group and NCO Financial share overlapping officers and directors. SAC ¶¶ 119-25. And fourth, the SAC alleges that in 2013, NCO Group posted an employment notice for a position described as "VP Operations - Attorney Network Services." SAC ¶ 126; Decl. of Joseph Tusa ("Tusa Decl."), ex. D.

In addition, the SAC also alleges four new debt collection communications that are supposedly actionable under the FDCPA. In his first new FDCPA claim, LaCourte alleges that on March 1, 2012, NCO Financial sent his counsel a letter in response to a subpoena. SAC ¶ 65(ee). The letter provides:

> Dear Mr. Tusa:
>
> We acknowledge receipt of the subpoena that was issued from to NCO Financial Systems, Inc. Enclosed please find our response.
>
> Very truly yours,
>
> Tracey A. Wild[]
>
> Senior Vice President, Corporate Legal Department
>
> . . .
>
> This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

SAC ¶ 65(ee), Tusa Decl., ex. I.

The remaining three new FDCPA claims relate to appearances by LaCourte and his counsel at proceedings in the underlying state-court action in which the defendants sought to collect LaCourte's then-settled debt to American Express (the "New York Action").

3

First, LaCourte allegedly "appeared personally" at a hearing "in December 2011." SAC ¶ 58. Second, LaCourte's counsel allegedly appeared on April 11, 2012. SAC ¶ 59. And third, LaCourte's counsel allegedly appeared again "to personally file the Stipulation Discontinuing Action With Prejudice" on August 3, 2012. SAC ¶ 61.

The Court addresses these claims in turn. First, as to the renewed claims against NCO Group, defendants contend that LaCourte still fails to state a plausible claim against that entity, whether for direct liability, vicarious liability, or piercing the corporate veil. In his opposition papers, LaCourte clarifies that he is not asserting a veil-piercing claim, and argues that he has plausibly alleged that NCO Group directly participated in the unlawful debt collection campaign waged against him. In the alternative, he contends that he has plausibly pled that NCO Financial has actual or apparent authority to conduct debt collection activities on NCO Group's behalf, rendering NCO Group vicariously liable.

The Court finds LaCourte's arguments no more persuasive now than they were in the previous round of motion practice. To the extent LaCourte relies on NCO Group's 10-K, that document undermines rather than supports LaCourte's claims. The 10-K states clearly on its first page that, "unless the context otherwise requires, 'we' . . . refer[s] to NCO Group, Inc. <u>and its subsidiaries</u>," NCO Group, Inc., Annual Report, at 1 (emphasis added), and also explains that "NCO Group, Inc. is a holding company and conducts substantially all of its business operations <u>through its subsidiaries</u>," <u>id.</u> at 2

4

(emphasis added). And the allegations that NCO Group and NCO Financial share officers and directors at most support a veil-piercing claim, which LaCourte has disclaimed asserting.[1]

That leaves only the allegations that NCO Group's website advertises debt collection services and contains a job posting for a position running the "attorney network services" division. But even if these meager allegations were enough to show, contrary to the 10-K, that NCO Group conducts debt collection operations itself rather than through its subsidiaries, nothing in the SAC suggests that NCO Group's operations had anything to do with the allegedly unlawful debt collection campaign against LaCourte. As the Court explained in its prior opinion in this case, "even if NCO Group were a 'debt collector,' that alone would not suffice to state a claim under the FDCPA. Under the various FDCPA provisions [his complaint] invokes, LaCourte must also plausibly allege that NCO Group was somehow involved in communicating with him or attempting to collect a debt from him in an unlawful manner." Memorandum & Order, Sept. 4, 2013, at 10. The alleged debt collection campaign consisted of (1) communications from NCO Financial, see SAC, ex. B, and (2)

---

[1] LaCourte's opposition papers also include additional facts uncovered in discovery, including that NCO Financial employees use "@ncogroup.com" email addresses, that NCO Financial's revenues are passed on to NCO Group, and that NCO Group and NCO Financial share certain business expenses. See Mem. of Law in Opp'n to Defs.' Mot. to Dismiss SAC at 15-16. These factual contentions are not properly before the Court on this motion, see Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998), and even if they were, they too would only support a veil-piercing claim, not a direct or vicarious liability claim.

collection activities by Foster & Garbus pursuant to the "<u>NCO Financial Systems</u> Attorney Network Standard Operating Procedures," FAC ¶ 72 (emphasis added).[2] Aside from the fact that NCO Group is NCO Financial's corporate parent, which alone is a patently insufficient basis for imposing liability, nothing in the SAC suggests that NCO Group was in any way involved in the alleged debt collection activities against LaCourte.

LaCourte's claim for vicarious liability fares no better. The SAC is bereft of any allegation suggesting that NCO Group manifested that NCO Financial was acting on its behalf, that NCO Financial accepted that undertaking, or that the two parties understood that NCO Group would control the undertaking. See <u>Basic Books, Inc. v. Kinko's Graphics Corp.</u>, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991); Restatement (Third) of Agency § 1.01. As for LaCourte's appeal to the doctrine of apparent authority, that doctrine creates liability only where the claimant reasonably relies on a representation by a principal that an agent has authority to act on its behalf. See <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1462 (2d Cir. 1995). Here, while the SAC indicates that NCO Group either itself advertises NCO

---

[2] Attempting to avoid the obvious inference that the relevant attorneys are managed by NCO Financial rather than NCO Group, LaCourte has deleted the words "NCO Financial Systems" from his description of the title of this critical document in the SAC. <u>Compare</u> SAC ¶ 76 <u>with</u> FAC ¶ 72; <u>see also</u> SAC at 1 n.1 (listing paragraphs that contain "new, supplemented or revised allegations" but failing to mention paragraph 76). But the full document, including its proper title, is incorporated into the SAC by reference, and the Court refuses to blind itself to the clear import of LaCourte's earlier allegations.

6

Financial's debt collection services under the "NCO Group" name, or allows NCO Financial to do so, these advertisements were clearly directed to creditors, not consumers. LaCourte never alleges that he saw these advertisements, much less that he reasonably relied on them.

The Court thus turns to the SAC's new FDCPA claims, which the Court concludes also must be dismissed. To begin with, LaCourte's claim based on the letter sent to his counsel on March 1, 2012 borders on the frivolous. The letter is clearly nothing more than a cover letter accompanying NCO Financial's response to a subpoena sent by LaCourte's counsel. It contains no representations about the validity or amount of LaCourte's debt, nor any other content that might violate the FDCPA. To be sure, the letter does contain a boilerplate notice stating that it "is a communication from a debt collector" and "an attempt to collect a debt," and "[a]ny information obtained will be used for that purpose." But courts are in agreement that such language "does not, by itself, demonstrate that defendant was attempting to collect a debt." Diaz v. Florida Default Law Grp., P.L., No. 3:09-CV-524-J-32MCR, 2011 WL 2456049, at *3 (M.D. Fla. Jan. 3, 2011); see also DeMoss v. Peterson, Fram & Bergman, No. Civ. 12-2197 DSD/JJK, 2013 WL 1881058, at *3 (D. Minn. May 6, 2013).

LaCourte's reliance on his and his counsel's appearances in the New York Action is similarly misplaced. Multiple judges in this District have held that held that FDCPA claims based on underlying

7

debt collection actions generally accrue on the date the underlying action was filed, regardless of when any subsequent proceedings took place. See Calka v. Kucker, Kraus & Bruh, LLP, No. 98 Civ. 0990 (RWS), 1998 WL 437151, at *3 (S.D.N.Y. Aug. 3, 1998) ("[Plaintiff] was . . . on notice of the misrepresentation and unconscionable debt collection means when the State Action was filed, and it was at that time that the violation accrued."); Sierra v. Foster & Garbus, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) (similar). Here, the New York Action was filed on January 17, 2011, outside of the FDCPA's one-year statute of limitations. See 15 U.S.C. § 1692k(d).

LaCourte responds that at least one district court has allowed a plaintiff to pursue separate FDCPA claims for subsequent appearances in an underlying debt collection action. See Judy v. Blatt, Hasenmiller, Leibsker & Moore LLC, No. 09 C 1226, 2010 WL 431484, at *5 (N.D. Ill. Jan. 29, 2010). But in that case, the court found that the plaintiff had plausibly alleged "that [the defendant] took some actions precipitating those appearances that rendered the appearances harassing, or some other violation of the FDCPA." Id.; see also Calka, 1998 WL 437151, at *3 (relying on the fact that the plaintiff did not "allege that the amended complaint and summary judgment motions [in the underlying state-court action] contained any new misrepresentation of the amount due not in the original complaint"). In this case, the SAC contains no indication that the defendants in any way precipitated the alleged appearances, made new false or misleading representations in them, or otherwise

8

took action to render them independently actionable under the FDCPA. In fact, the relevant paragraphs of the SAC do not even mention the defendants. See SAC ¶¶ 58, 59, 61, 66.

Accordingly, for the foregoing reasons, by Order dated July 17, 2013, the Court once again dismissed all claims against NCO Group, as well as the four new FDCPA claims asserted in the SAC. The claims that remained after the earlier Memorandum & Order of September 4, 2013 still remain, however, and may proceed.

Dated:   New York, NY
         September 5, 2013                    JED S. RAKOFF, U.S.D.J.