UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

JAMES LACOURTE, on behalf of himself )
and all others similarly situated,          )          Civil Action No.:
                                                     )
                    Plaintiff,                    )          1:12-cv-09453-JSR
                                                     )
v.                                                  )
                                                     )
JP MORGAN CHASE & CO., NCO GROUP, )
INC. n/k/a EXPERT GLOBAL SOLUTIONS, INC. )
NCO FINANCIAL SYSTEMS, INC., ONE     )
EQUITY PARTNERS HOLDING               )
CORPORATION a/k/a ONE EQUITY PARTNERS)
LLC a/k/a ONE EQUITY PARTNERS II, L.P., )
FORSTER & GARBUS, LLP, and DOES 1      )
THROUGH 150, LAW FIRM AFFILIATES OF )
NCO GROUP, INC. AND NCO FINANCIAL   )
SYSTEMS, INC.,                                )
                                                     )
                    Defendants.                )
-------------------------------------------------------------x

**NCO FINANCIAL SYSTEMS, INC. AND FORSTER & GARBUS, LLP'S
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. SUMMARY OF ARGUMENT ......................................................................................2

III. PROCEDURAL HISTORY ..........................................................................................4

IV. FACTS...........................................................................................................................5

V. LAW AND ARGUMENT ..............................................................................................5

*A. Plaintiff's FDCPA Claim Should Be Dismissed*.............................................................5

*B. Plaintiff's NYJL Claim Should Be Dismissed*...............................................................8

    *1. F&G Never Made A Misrepresentation With The Intent To Deceive The State Court Or Plaintiff* ...........................................................9

        *i. The Four Alleged False Statements In The State Court Complaint Are Not Actionable* ......................................................11

        *ii. F&G Completed A Reasonable Inquiry Under The Circumstances Before Filing The State Court Lawsuit*.......................12

    *2. Plaintiff Did Not Suffer Any Ascertainable Or Compensable Damages As A Result Of F&G's Actions* .......................................................22

*C. Plaintiff's Conspiracy Claim Should Be Dismissed* .............................................24

VI. CONCLUSION............................................................................................................25

## TABLE OF AUTHORITIES

**Statutes**

15 U.S.C. § 1681n(c) ....................................................................................... 4 & 25

15 U.S.C. § 1681o(b) ...................................................................................... 4 & 25

15 U.S.C. § 1692e ..................................................................................................7

15 U.S.C. § 1692g(a)(3) ............................................................................... 3 & 15

15 U.S.C. § 1692g(b) ..........................................................................................14

15 U.S.C. § 1692k(a)(3) ............................................................................... 8 & 25

Fair Credit Reporting Act, 15 U.S.C. § 1681 .......................................................4

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ..........................................2

New York General Business Law § 349 .................................................................4

New York Judiciary Law § 487 ....................................................... 2, 8, 11, & 25

N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1a .............................................22

N.Y. C.P.L.R. § 3018(b) ............................................................................2-3 & 20-21

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961 ..................4

**Cases**

*Amalfitano v. Rosenberg,*

533 F.3d 117 (2d Cir. 2008) .................................................................................8

*Amalfitano v. Rosenberg,*

903 N.E.2d 265 (N.Y. 2009) ................................................................................9

*Amond v. Brincefield, Hartnett & Associates, P.C.,*

1999 WL 152555 (4th Cir. 1999) .......................................................................16

*Beattie v. D.M. Collections, Inc.,*

754 F.Supp. 383 (D. Del. 1991)...........................................................................................16

*Bleich v. Revenue Maximization Grp., Inc.*,

233 F.Supp.2d 496 (E.D. N.Y. 2002)....................................................................................15

*Boxberger v. New York, N.H. & H.R. Co.*,

142 N.E. 357 (N.Y. 1923) .....................................................................................................20

*Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*,

2007 WL 2695795 (D. Minn. 2007) ........................................................................................7

*Clark v. Capital Credit & Collection Servs., Inc.*,

460 F.3d 1162 (9th Cir. 2006) ...............................................................................................15

*Cresswell v. Sullivan & Cromwell*,

771 F.Supp. 580 (S.D. N.Y. 1991)........................................................................................22

*Daniels v. Alvarado*,

2004 WL 502561 (E.D. N.Y. Mar. 12, 2004).........................................................................10

*Davis v. NCO Portfolio Mgmt., Inc.*,

2006 WL 290491 (S.D. Ohio Feb. 7, 2006) ..........................................................................17

*Decosta v. Williams*,

462 N.Y.S.2d 799 (N.Y. Sup. Ct. 1983) ...............................................................................20

*DeMoss v. Peterson, Fram & Bergman*,

2013 WL 1881058 (D. Minn. May 6, 2013) .............................................................................7

*Diaz v. Florida Default Law Group, P.L.*,

2011 WL 2456049 (M.D. Fla. 2011) ........................................................................................7

*DiIorio v. Gibson & Cushman of New York, Inc.*,

566 N.Y.S.2d 1 (N.Y. App. Div. 1990)..............................................................................20-21

iv

*DiPrima v. DiPrima,*

490 N.Y.S.2d 607 (N.Y. App. Div. 1985)................................................................23

*Ducrest v. Alco Collections, Inc.,*

931 F.Supp. 459 (M.D. La. 1996)..........................................................................16

*Guerrero v. RJM Acquisitions LLC,*

499 F.3d 926 (9th Cir. 2007) ..................................................................................8

*Haggerty v. Ciarelli & Dempsey,*

374 F.App'x 92 (2d Cir. 2010) ...............................................................................9

*Harvey v. Great Seneca Fin. Corp.,*

453 F.3d 324 (6th Cir. 2006) ...........................................................................16-17

*Hasbrouck v. Arrow Fin. Servs. LLC,*

2011 WL 1899250 (N.D. N.Y. May 19, 2011)........................................................16

*Hill v. Javitch, Block & Rathbone, LLP,*

574 F.Supp.2d 819 (S.D. Ohio 2008)....................................................................17

*Howe v. Reader's Digest Ass'n, Inc.,*

686 F.Supp. 461 (S.D. N.Y. 1988)........................................................................15

*In re Cooper,*

253 B.R. 286 (Bankr. N.D. Fla. 2000) ..................................................................16

*In re M.A.S. 284 Parking Corp.,*

1999 WL 1295816 (2d Cir. 1999)...........................................................................9

*In re Wachovia Equity Sec. Litig.,*

753 F.Supp.2d 326 (S.D. N.Y. 2011).....................................................................24

*Jacobson v. Healthcare Fin. Servs., Inc.,*

516 F.3d 85 (2d Cir. 2008) ................................................................................................14

*Jaroslawicz v. Cohen*,

783 N.Y.S.2d 467 (N.Y. App. Div. 2004)...........................................................................23

*John T. Brady & Co., Inc. v. City of New York*,

429 N.Y.S.2d 530 (N.Y. Sup. Ct. 1980) ............................................................................20

*Kaye Scholer LLP v. CNA Holdings, Inc.*,

2010 WL 1779917 (S.D. N.Y. Apr. 28, 2010) .....................................................................8

*Kropelnicki v. Siegel*,

290 F.3d 118 (2d Cir. 2002) ................................................................................................8

*Lazer Elec. Corp. v. Cecchi*,

1997 WL 311925 (S.D. N.Y. June 10, 1997) .....................................................................22

*Maersk, Inc. v. Neewra, Inc.*,

687 F.Supp.2d 300 (S.D. N.Y. 2009).................................................................................24

*M'Baye v. New Jersey Sports Prod., Inc.*,

2007 WL 431881 (S.D. N.Y. Feb. 7, 2007) .................................................................9 & 22

*Michalic by Nakovics v. Klat*,

512 N.Y.S.2d 436 (N.Y. App. Div. 1987)............................................................................9

*Moormann v. Perini & Hoerger*,

886 N.Y.S.2d 49 (N.Y. App. Div. 2009)..............................................................................9

*Morelli & Gold, LLP v. Altman*,

897 N.Y.S.2d 671 (N.Y. Sup. Ct. 2009) ............................................................................23

*New York City Transit Auth. v. Morris J. Eisen, P.C.*,

715 N.Y.S.2d 232 (N.Y. App. Div. 2000)...........................................................................23

*Nicholson v. Forster & Garbus LLP,*

2013 WL 2237554 (E.D. N.Y. May 17, 2013) ...........................................................................8

*Nwoke v. Countrywide Home Loans, Inc.,*

251 F.App'x 363 (7th Cir. 2007) ...........................................................................................7

*O'Brien v. Alexander,*

898 F.Supp. 162 (S.D. N.Y. 1995) ................................................................................10 & 12

*O'Callaghan v. Sifre,*

537 F.Supp.2d 594 (S.D. N.Y. 2008) .............................................................................10 & 12

*Palmer v. I.C. Sys., Inc.,*

2005 WL 3001877 (N.D. Cal. Nov. 8, 2005) .........................................................................15

*Papworth v. Steel Hector & Davis,*

2007 WL 2903944 (N.D. N.Y. Sept. 30, 2007) ......................................................................10

*Rafter v. Fleet Boston Fin. Corp.,*

2006 WL 1071753 (S.D. N.Y. Apr. 20, 2006) .......................................................................25

*Richman v. Kauffman,*

388 N.Y.S.2d 147 (N.Y. App. Div. 1976) ..............................................................................20

*Russell v. Equifax A.R.S.,*

74 F.3d 30 (2d Cir. 1996) ....................................................................................................14

*Savitsky v. Mazzella,*

2004 WL 2454120 (S.D. N.Y. Nov. 1, 2004) ........................................................................10

*S. Blvd. Sound, Inc. v. Felix Storch, Inc.,*

629 N.Y.S.2d 635 (N.Y. Civ. Ct. 1995) .............................................................................8-9

*Schuh v. Druckman & Sinel, L.L.P.,*

751 F.Supp.2d 542 (S.D. N.Y. 2010) .......................................................................8

*Stamper v. Wilson & Assocs., P.L.L.C.,*

2010 WL 1408585 (E.D. Tenn. 2010) ....................................................................7

*Taylor v. Luper, Sheriff & Niedenthal Co., L.P.A.,*

74 F.Supp.2d 761 (S.D. Ohio 1999) ...............................................................15-16

*Thomas v. Chamberlain, D'Amanda, Oppenheimer & Greenfield,*

497 N.Y.S.2d 561 (N.Y. App. Div. 1985)..............................................................10

*Tromba v. M.R.S. Associates, Inc.,*

323 F.Supp.2d 424 (E.D. N.Y. 2004).......................................................................8

*Werner v. Katal Country Club,*

650 N.Y.S.2d 866 (N.Y. App. Div. 1996)...........................................................22-23

*Wetzel v. Town of Orangetown,*

2010 WL 743039 (S.D. N.Y. Mar. 2, 2010)...........................................................10

*Young v. Thieblot Ryan, P.A.,*

2012 WL 6698632 (D. Md. Dec. 21, 2012) ............................................................15

Defendants NCO Financial Systems, Inc. ("NCO Financial") and Forster & Garbus, LLP ("F&G") (collectively, "Defendants"), respectfully submit the following memorandum in support of their Motion for Summary Judgment.  For the following reasons, this Court should grant Defendants' motion and dismiss the Second Amended Class Action Complaint filed by plaintiff, James LaCourte, with prejudice.

## I. INTRODUCTION

This case relates to the collection of an American Express debt owed by plaintiff with an original balance of $6,880.03 (the "Account").  After plaintiff failed to remit payment, the Account was placed for collection with Nationwide Credit, Inc. ("Nationwide").  In April 2009, plaintiff settled the Account through Nationwide.  Per the settlement, plaintiff agreed to make and in fact made several payments totaling $4,128.02; in exchange for making the payments, plaintiff received a debt release for the $2,752.01 balance owed on the Account.

Although the Account was settled by Nationwide, the company failed to code the Account as settled.  American Express, therefore, was unaware that the Account had been settled.

Unaware the Account was settled through Nationwide, American Express placed the Account with NCO Financial for collection on October 16, 2010.  NCO Financial unsuccessfully attempted to collect the Account for approximately 45 days.

On December 8, 2010, as an agent for American Express, and pursuant to a Master Services Agreement with American Express, NCO Financial forwarded the Account to F&G for litigation.  After sending a letter and calling plaintiff 11 times and leaving 7 messages, all with no response from plaintiff, F&G filed a state court collection lawsuit (the "State Court Lawsuit") against plaintiff on behalf of American Express for the $2,752.01 balance believed to be owed.

1

Most importantly, neither American Express, NCO Financial, nor F&G was aware of the settlement plaintiff reached with Nationwide.  At the time the State Court Lawsuit was filed, American Express' database and records indicated the Account was still due and owing with a $2,752.01 balance; the database and records did *not* indicate the Account had been settled.

Plaintiff did not produce a single document during the pendency of the State Court Lawsuit evidencing settlement of the Account.  Plaintiff did not assert release or settlement as an affirmative defense in response to the State Court Lawsuit, as required by N.Y. C.P.L.R. § 3018(b).  Nonetheless, upon learning that plaintiff settled the Account through Nationwide, F&G dismissed the State Court Lawsuit against plaintiff with prejudice.  This class action lawsuit against NCO Financial and F&G then followed.

## II. SUMMARY OF ARGUMENT

Through various rulings, the Court dismissed all parties except NCO Financial and F&G. The Court also dismissed all claims against NCO Financial and F&G except for:  (1) a single claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, against NCO Financial and F&G relating to a purported December 29, 2011 telephone call; (2) a claim under the New York Judiciary Law ("NYJL") § 487 against F&G; and (3) a claim for conspiracy to violate the NYJL against both F&G and NCO Financial.

The Court should now dismiss plaintiff's remaining claims for at least 3 reasons.  ***First***, plaintiff's allegation regarding the December 29, 2011 telephone call is false.  Contrary to plaintiff's allegation, neither NCO Financial nor F&G called plaintiff on December 29, 2011.  In truth, on December 28, 2011, F&G attorney Amy Gavlik called plaintiff's attorney, Joseph S. Tusa.  Mr. Tusa did not answer Ms. Gavlik's call, so Ms. Gavlik left a voice message for Mr. Tusa to call her back.  Ms. Gavlik did *not* demand payment of the Account in her message; she

2

simply identified the case and herself and asked Mr. Tusa to call back.  The call was *not* a communication with the plaintiff about the debt.  Considering the undisputed facts, plaintiff's FDCPA claim relating to the alleged December 29, 2011 call should be dismissed with prejudice, and Defendants reserve the right to seek attorney's fees and costs for the baseless claim.

**_Second_**, there are no facts to support plaintiff's contention that F&G deceived or intended to deceive the state court or plaintiff in violation of the NYJL.  It is true that plaintiff had previously settled his American Express debt with Nationwide.  However, F&G and NCO Financial were unaware of the settlement when F&G filed the State Court Lawsuit.  In fact, American Express was unaware of the settlement and, at the time the State Court Lawsuit was filed, American Express' database and records indicated the Account was still due and owing with a $2,752.01 balance.

F&G also took measures to validate the debt before filing suit.  F&G received and reviewed account information from American Express' system of record, wrote to plaintiff advising him that he may be sued and of his right to dispute the debt (plaintiff never responded to any of the letters), and placed 11 phone calls to plaintiff to discuss the debt (plaintiff never responded to any of the calls).  Upon learning the Account was not owed, F&G promptly dismissed the State Court Lawsuit with prejudice, even though plaintiff never asserted release or settlement as an affirmative defense (as required by N.Y. C.P.L.R. § 3018(b)) and did not produce a single document evidencing the settlement.  Simply put, plaintiff's NYJL claim fails because plaintiff cannot prove F&G made a misrepresentation with the requisite "intent to deceive."  Furthermore, plaintiff's NYJL claim fails because plaintiff did not suffer any ascertainable or compensable damages as a result of F&G's actions.

**_Finally_**, plaintiff's claim for conspiracy to violate the NYJL fails.   There is no

3

independent cause of action for conspiracy. Considering plaintiff's NYJL claim fails, his conspiracy claim likewise fails. And the NYJL does not apply to non-attorneys, non-law firms, such as NCO Financial.

### III. PROCEDURAL HISTORY

On December 28, 2012, plaintiff filed the instant class action lawsuit against F&G, NCO Group, Inc. n/k/a Expert Global Solutions, Inc. ("NCO Group"), JP Morgan Chase & Co. ("JPMC"), and One Equity Partners ("OEP"). *See* Dkt. No. 1. (NCO Financial was *not* a named defendant in the original complaint.) Plaintiff asserted claims under the FDCPA, NYJL, New York General Business Law ("NY GBL") § 349, Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., and Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1961, *et seq*. *Id.* In his original complaint, plaintiff alleged he settled his American Express debt with NCO Financial, which then launched a collection campaign against him with F&G. *Id.* at ¶¶ 13-17.

On February 27, 2013, plaintiff filed his first amended complaint. *See* Dkt. No. 34. Plaintiff added NCO Financial as a named defendant, removed his RICO claim, and added 4 conspiracy claims. *Id.* Importantly, plaintiff dropped his allegation that he settled his American Express debt with NCO Financial. *Compare* Dkt. No. 1, at ¶ 13 with Dkt. No. 34, at ¶ 37.

On March 12, 2013, the defendants filed motions to dismiss all claims. *See* Dkt. Nos. 38 & 43.

On April 26, 2013, the Court entered an order dismissing NCO Group, JPMC, and OEP; dismissing the NY GBL and FCRA claims in their entirety;[1] dismissing "all claims brought

---

[1] Defendants reserve the right to seek attorney's fees and costs for plaintiff's baseless FCRA claim per 15 U.S.C. §§ 1681n(c) and 1681o(b).

under the FDCPA except to the extent based on the alleged debt collection phone call placed to plaintiff on December 29, 2011;" and dismissing all conspiracy claims except the one relating to the NYJL.  *See* Dkt. Nos. 56 & 80.

On May 15, 2013, plaintiff filed his second amended complaint.  *See* Dkt. No. 60. Plaintiff reasserted his claims against NCO Group by adding approximately 13 paragraphs in support of his corporate veil piercing argument; added four new acts in support of his FDCPA claim; and added a NYJL subclass.  *Id.* at ¶¶ 39, 58-59, 61, 65-66, 113-126, 206, & 250.

On June 5, 2013, the defendants filed a motion to dismiss.  *See* Dkt. 61.

On July 23, 2013, the Court entered an order granting defendants' motion in its entirety. *See* Dkt. Nos. 76 & 81.  Following the Court's ruling, plaintiff's remaining claims are:  (1) FDCPA claim against NCO Financial and F&G based on the alleged December 29, 2011 debt collection call; (2) NYJL claim against F&G; and (3) a claim for conspiracy to violate the NYJL against both F&G and NCO Financial.  *Id.*

## IV. FACTS

*See* Statement of Material Facts, separately filed pursuant to Local Rule 56.1(a).

## V. LAW AND ARGUMENT

There are no genuine issues of material fact.  As a matter of law, Defendants are entitled to summary judgment on plaintiff's remaining claims.

### *A. Plaintiff's FDCPA Claim Should Be Dismissed*

As noted, plaintiff's sole remaining FDCPA claim is based upon an alleged December 29, 2011 debt collection call to plaintiff.  *See* Dkt. Nos. 56, 76, & 80-81.  Plaintiff's FDCPA claim should now be dismissed with prejudice.

Specifically, plaintiff alleges, "[o]n December 29, 2011, [F&G] or [NCO Group] or

5

[NCO Financial] used the telephone wires to call Plaintiff's home and falsely represent that Plaintiff owed a debt of $2,752.01 after knowing he was represented by counsel[.]"  Dkt. No. 60, at ¶ 65(dd).  Plaintiff's allegation is false.

As an initial matter, plaintiff testified he did *not* make this allegation based upon his personal knowledge.  *See* **Exhibit J**, Deposition of James LaCourte, at pp. 128-131, lns. 13-21.  Instead, plaintiff made the allegation based upon his attorney's reading of NCO Financial's account notes:

> Q.    Your basis for that allegation is a record that was produced by the defendant – one of the defendants in this case, correct?
> A.    Correct.
> Q.    Other than the document that you reviewed or your attorney reviewed, you have no independent recollection of that phone call, do you?
> A.    I do not.
> Q.    It is possible that you are misinterpreting the document, isn't it?
> A.    It is a possibility.
> Q.    It is possible that phone call wasn't to you, in fact?
> A.    I don't have a recollection.  It could have been to me.

*Id.* at p. 130, lns. 8-23.  Plaintiff further testified:

> Q.    As we sit here today, you have no specific recollection of any December 29, 2011 call, do you?
> A.    I do not.
> Q.    If NCO testifies that there was no call to you on December 29, 2011, you would have no reason to disagree, would you?
> MR. TUSA: Objection, calls for speculation.
> You can answer.
> A.    It was in their documents, so I believe it was made to my home, but I have no recollection myself.

*Id.* at p. 133, lns. 6-18.

And opposing counsel, Mr. Tusa, confirmed during a hearing that the allegation was based upon his reading of NCO Financial's account notes.  *See* **Exhibit U**, Excerpt of Transcript of 4/2/13 Hearing, at pp. 34-35, lns. 17-3, & p. 39, lns. 11-17.

6

Contrary to plaintiff's allegation, neither NCO Financial nor NCO Group called plaintiff's home on December 29, 2011. *See* **Exhibit Z**, Affidavit of Lisa Reed, at ¶ 27. In fact, NCO Group does not make any phone calls. *Id.* And NCO Financial ceased all collection attempts on the Account more than a year earlier, on December 8, 2010, when the Account was forwarded to F&G. *Id.*

Plaintiff's allegation regarding the purported December 29, 2011 call is based upon a misreading of the related account notes. In truth, Amy Gavlik (an attorney with F&G who was representing American Express in the State Court Lawsuit) called plaintiff's counsel, Mr. Tusa, on December 28, 2011. *See* **Exhibit X**, Affidavit of Amy Gavlik, at ¶ 20. Mr. Tusa did not answer Ms. Gavlik's call, so Ms. Gavlik left a voice message for Mr. Tusa to call her back. *Id.* at ¶ 21. Ms. Gavlik did *not* demand payment of the Account in her message; she simply identified the case and herself and asked Mr. Tusa to call back. *Id.* The following day, on December 29, 2011, the call was documented in the related account notes. *Id.* Contrary to plaintiff's allegation, F&G did not call plaintiff's home on December 29, 2011. *Id.* at ¶ 22; **Exhibit Y**, Affidavit of Edward Damsky, at ¶ 22.

There are no genuine issues of material fact. Defendants did not call plaintiff's home on December 29, 2011 as alleged, and the December 28, 2011 call was *not* a communication with the plaintiff (or anyone else) in an attempt to collect the Account. Considering the undisputed facts, the Court should dismiss plaintiff's remaining FDCPA claim.[2] And Defendants reserve the

---

[2] *See* 15 U.S.C. § 1692e; *Diaz v. Florida Default Law Group, P.L.*, 2011 WL 2456049, *3 n. 9 (M.D. Fla. 2011); *Nwoke v. Countrywide Home Loans, Inc.*, 251 F.App'x 363, 365 (7th Cir. 2007); *Stamper v. Wilson & Assocs., P.L.L.C.*, 2010 WL 1408585, *9 (E.D. Tenn. 2010); *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, 2007 WL 2695795, *3-6 (D. Minn. 2007); *DeMoss v. Peterson, Fram & Bergman*, 2013 WL 1881058, *3 (D. Minn. May 6, 2013); *see also*

right to seek attorney's fees and costs for plaintiff's baseless FDCPA claim. *See* 15 U.S.C. § 1692k(a)(3) ("On a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.").

## B. Plaintiff's NYJL Claim Should Be Dismissed

Under New York Law, "[a]n *attorney or counselor* who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, *with intent to deceive* the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he *forfeits to the party injured treble damages*, to be recovered in a civil action." N.Y. Judiciary Law § 487 (emphasis added). "Section 487 thus permits a civil action to be maintained by any party who is *injured* by an attorney's *intentional deceit or collusion* in New York on a court or on any party to litigation, and it provides for treble damages." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008) (emphasis added).

As a penal statute, the NYJL must be *strictly construed*. *See Kaye Scholer LLP v. CNA Holdings, Inc.*, 2010 WL 1779917, *2 (S.D. N.Y. Apr. 28, 2010); *S. Blvd. Sound, Inc. v. Felix*

---

*Schuh v. Druckman & Sinel, L.L.P.*, 751 F.Supp.2d 542, 551 (S.D. N.Y. 2010) ("[T]he letter was not sent to [plaintiffs] and thus does not fall within the statute[.]"); *Tromba v. M.R.S. Associates, Inc.*, 323 F.Supp.2d 424, 428 (E.D. N.Y. 2004); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer[.]"); *Nicholson v. Forster & Garbus LLP*, 2013 WL 2237554, *3 n. 5 (E.D. N.Y. May 17, 2013) (recognizing *Tromba* and *Kropelnicki*, "[d]efendants are correct that the alleged misrepresentations made by [debt collector] to plaintiff's counsel . . . are not relevant to plaintiff's FDCPA claim."); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir. 2007) ("[W]hen the debt collector ceases contact with the debtor, and instead communicates exclusively with an attorney hired to represent the debtor in the matter, the Act's strictures no longer apply to those communications.").

*Storch, Inc.*, 629 N.Y.S.2d 635, 637 (N.Y. Civ. Ct. 1995) ("This statute is in part a penal statute, and thus it must be strictly construed.").

Plaintiff alleges F&G, a law firm, violated the NYJL.  *See* Dkt. No. 60, at ¶¶ 247-250. Plaintiff is wrong.  The Court should dismiss plaintiff's NYJL claim for at least two reasons. First, the record evidence proves F&G never made a misrepresentation with the intent to deceive the state court or plaintiff.  Second, plaintiff did not suffer any ascertainable or compensable damages as a result of F&G's actions.

### *1. F&G Never Made A Misrepresentation With The Intent To Deceive The State Court Or Plaintiff*

In order to state a claim under the NYJL, a plaintiff must show the attorney intended to deceive the court or the plaintiff.  *See M'Baye v. New Jersey Sports Prod., Inc.*, 2007 WL 431881, *13 (S.D. N.Y. Feb. 7, 2007); *Amalfitano v. Rosenberg*, 903 N.E.2d 265, 268 (N.Y. 2009); *Moormann v. Perini & Hoerger*, 886 N.Y.S.2d 49, 50 (N.Y. App. Div. 2009) ("A violation of Judiciary Law § 487 requires an intent to deceive[.]"); *In re M.A.S. 284 Parking Corp.*, 1999 WL 1295816, *2 (2d Cir. 1999) (unpublished) ("To succeed under § 487, the complaining party must show that the attorney intended to deceive the court or a party[.]").

"New York does not readily assume such intent from conduct falling 'well within the bounds of the adversarial proceeding.'"  *Haggerty v. Ciarelli & Dempsey*, 374 F.App'x 92, 93 (2d Cir. 2010) (collecting cases).  Moreover, a plaintiff must assert more than mere negligence to support a NYJL claim.  *See Michalic by Nakovics v. Klat*, 512 N.Y.S.2d 436, 438 (N.Y. App. Div. 1987) ("With respect to the plaintiffs' causes of action based upon simple negligence, the lack of privity between the plaintiffs and the defendant attorneys presents a fatal defect in the plaintiffs' pleadings, since New York law does not recognize any liability on the part of an

attorney to a nonclient third party for injuries sustained as a result of an attorney's actions in representing his client absent fraud, collusion, or a malicious or tortious act[.]") (collecting cases).

As this Court has ruled, "[b]y confining the reach of the statute to intentional egregious misconduct, this rigorous standard affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy, thus excluding from liability statements to a court that fall 'well within the bounds of the adversarial proceeding.'" *O'Callaghan v. Sifre*, 537 F.Supp.2d 594, 596 (S.D. N.Y. 2008); *see also Wetzel v. Town of Orangetown*, 2010 WL 743039, *19 (S.D. N.Y. Mar. 2, 2010).

"In establishing the requisite intent to deceive, courts often look for 'chronic' or 'extreme' legal delinquency." *Papworth v. Steel Hector & Davis*, 2007 WL 2903944, *11 (N.D. N.Y. Sept. 30, 2007); *see also Savitsky v. Mazzella*, 2004 WL 2454120, *5 (S.D. N.Y. Nov. 1, 2004); *Daniels v. Alvarado*, 2004 WL 502561, *9 (E.D. N.Y. Mar. 12, 2004).

"[A]n action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would *not* be sufficient to make out a violation of § 487." *O'Callaghan*, 537 F.Supp.2d at 596 (emphasis added); *see also Thomas v. Chamberlain, D'Amanda, Oppenheimer & Greenfield*, 497 N.Y.S.2d 561, 562 (N.Y. App. Div. 1985) ("Plaintiffs' claim pursuant to section 487 of the Judiciary Law should have been dismissed for failure to state a cause of action. Assertion of unfounded allegations in a pleading, even if made for improper purposes, does not provide a basis for liability under the statute[.]"); *O'Brien v. Alexander*, 898 F.Supp. 162, 169-70 (S.D. N.Y. 1995) ("What plaintiff really is alleging is that the defendants' claims against him in the Sequa Case were unfounded. That is an insufficient basis, however, for asserting a claim under section 487 of the Judiciary Law.").

10

### *i. The Four Alleged False Statements In The State Court Complaint Are Not Actionable*

Plaintiff contends 4 allegations made in the state court complaint were false when made and support his NYJL claim.  *See* Dkt. No. 60, at ¶ 50.[3]  Even if the allegations were false, that alone is insufficient to support a NYJL claim.  As noted, a plaintiff must show more than a false statement to assert a NYJL claim; a plaintiff must show the attorney made a false statement "with intent to deceive" the state court or him.  *See* N.Y. Judiciary Law § 487.  Plaintiff has not (and cannot) make the required showing here because the record evidence is clear: F&G was unaware plaintiff did not owe the Account until *after* the State Court Lawsuit was filed.  Indeed, at the time the State Court Lawsuit was filed, American Express' database and records indicated the Account was still due and owing with a $2,752.01 balance; the database and records did *not* indicate the Account had been settled.  *See* **Exhibit K**, Deposition of Paul Lavarta, at pp. 52-53, lns. 25-9, & pp. 61-62, lns. 11-14; **Exhibit L**, Deposition of Iching Chao, at pp. 15-18, lns. 23-1, & pp. 24-26, lns. 3-11; **Exhibit Q**, Affidavit of Paul Lavarta, at ¶ 4; **Exhibit R**, Affidavit of

---

[3] According to plaintiff, the alleged false allegations are:

> "THERE REMAINS AN AGREED BALANCE ON SAID ACCOUNT OF 2,752.01, DUE AND OWING.  NO PART OF SAID SUM HAS BEEN PAID ALTHOUGH DULY DEMANDED."

> "DEFENDANT(S) IS IN DEFAULT AND DEMAND FOR PAYMENT HAS BEEN MADE."

> "PLAINTIFF STATED AN ACCOUNT TO DEFENDANT WITHOUT OBJECTION BY DEFENDANT."

> "PLAINTIFF STATED AN ACCOUNT TO DEFENDANT WITHOUT OBJECTION THAT THERE IS NOW DUE PLAINTIFF FROM DEFENDANT(S) THE AMOUNT SET FORTH IN THE COMPLAINT, NO PART OF WHICH HAS BEEN PAID, ALTHOUGH DULY DEMANDED."

*Id.*; *see also* **Exhibit D**, State Court Complaint.

11

Iching Chao, at ¶ 6.  At the time the State Court Lawsuit was filed, F&G believed in good faith that $2,752.01 was due and owing on the Account.  *See* **Exhibit O**, Deposition of Joel D. Leiderman (Volume I), at pp. 44-48, lns. 14-3.

There are no facts to support the contention that F&G included any statement in the state court complaint or made any statement during the state court litigation with the intent to deceive the state court or plaintiff.  In fact, all of the evidence is to the contrary.  *See* **Exhibit X**, Affidavit of Amy Gavlik, at ¶ 31; **Exhibit Y**, Affidavit of Edward Damsky, at ¶ 33.  Further, plaintiff testified he has no facts to support his allegation that F&G acted with any intent to deceive him or the state court:

> Q.  We just talked about the New York Judiciary Law, right?
> A.  Correct.
> Q.  You said you didn't have any facts to support your allegation that Forster and Garbus acted with any intent to deceive you or the court, correct?
> A.  Correct.

**Exhibit J**, Deposition of James LaCourte, at pp. 220-221, lns. 23-6.  And "an action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings [is] *not* [] sufficient to make out a violation of § 487."  *O'Callaghan*, 537 F.Supp.2d at 596 (emphasis added); *see also O'Brien*, 898 F.Supp. at 169-70.

### *ii.  F&G Completed A Reasonable Inquiry Under The Circumstances Before Filing The State Court Lawsuit*

Realizing he cannot meet his burden of proving F&G made a false statement with the intent to deceive the state court or him, plaintiff focuses on what he contends is improper action by F&G.  According to plaintiff, F&G violated the NYJL by "commencing debt collection lawsuits . . . [1] with no knowledge of the alleged underlying debt or [2] without having verified the alleged debts or [3] performing a diligent investigation of the validity and amount of the

12

alleged debts." Dkt. No. 60, at ¶ 249.  Although alleged by plaintiff as 3 separate bases for a NYJL violation, in essence, plaintiff is asserting only one, *i.e.*, that F&G filed the State Court Lawsuit against him without completing a reasonable inquiry under the circumstances.  Plaintiff is wrong for at least 9 reasons.

**_First_**, contrary to plaintiff's allegations, F&G had "knowledge of the alleged underlying debt" before filing suit.  F&G received and reviewed electronic information about plaintiff and the Account prior to filing the State Court Lawsuit.  *See* **Exhibit O**, Deposition of Joel D. Leiderman (Volume I), at pp. 22-23, lns. 7-3; **Exhibit X**, Affidavit of Amy Gavlik, at ¶ 3; **Exhibit Y**, Affidavit of Edward Damsky, at ¶ 3.  The information included plaintiff's name, address, social security number, home phone number, amount owed, and last payment date.  *Id.*

**_Second_**, at the time the State Court Lawsuit was filed, American Express' database and records indicated the Account was still due and owing with a $2,752.01 balance; the database and records did *not* indicate the Account had been settled.  *See* **Exhibit K**, Deposition of Paul Lavarta, at pp. 52-53, lns. 25-9, & pp. 61-62, lns. 11-14; **Exhibit L**, Deposition of Iching Chao, at pp. 15-18, lns. 23-1, & pp. 24-26, lns. 3-11; **Exhibit Q**, Affidavit of Paul Lavarta, at ¶ 4; **Exhibit R**, Affidavit of Iching Chao, at ¶ 6.

**_Third_**, *prior to filing the State Court Lawsuit*, F&G made multiple attempts to reach plaintiff by letter and telephone.  *See* Dkt. 60, at ¶¶ 39 & 41 & Exhibit C; **Exhibit C**, F&G 12/9/10 Letter; **Exhibit X**, Affidavit of Amy Gavlik, at ¶¶ 5-8; **Exhibit Y**, Affidavit of Edward Damsky, at ¶¶ 5-8.  In total, F&G sent one letter and placed 11 phone calls, resulting in 7 telephone messages, for plaintiff *before* filing suit.  *Id.*  Notably, the letter F&G sent plaintiff explained the Account had been placed with F&G for collection.  *Id.*  The letter also contained the required FDCPA "validation notice," advising plaintiff of his right to dispute the debt and

that F&G would assume the debt is valid if not notified otherwise within 30 days of receipt of the notice.  *Id.*

The "validation notice" "gives the consumer the information necessary to challenge the debt allegedly owed before making payment[.]"  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32-33 (2d Cir. 1996).  The Second Circuit has explained:

> If the consumer notifies the debt collector in writing, "within the thirty-day period" afforded by the [FDCPA], that [he] disputes the debt or any portion of the debt, the debt collector must "cease collection."  The debt collector may resume collection activities only when it has obtained verification of the debt, and has mailed a copy of the verification to the consumer.  The thirty-day window is not a "grace period"; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity.

*Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (citations omitted); *see also* 15 U.S.C. § 1692g(b).

Although plaintiff admits to receiving the letter and calls, he *never* responded.  *See* Dkt. No. 60, at ¶¶ 39 & 41 & Exhibit C; **Exhibit J**, Deposition of James LaCourte, at pp. 74-76, lns. 14-7, pp. 163-64, lns. 18-2, & p. 166, lns. 4-6; **Exhibit X**, Affidavit of Amy Gavlik, at ¶¶ 9-10; **Exhibit Y**, Affidavit of Edward Damsky, at ¶¶ 9-10.  Instead, plaintiff remained silent and ignored F&G's letter, calls, and messages.  *Id.*  If plaintiff had not ignored F&G's communications and requested verification of the Account, F&G would have ceased collection of the Account, and the State Court Lawsuit would not have been filed (if at all) until after verification of the Account was sent to plaintiff.  *See* **Exhibit X**, Affidavit of Amy Gavlik, at ¶¶ 9-10 & 12; **Exhibit Y**, Affidavit of Edward Damsky, at ¶¶ 9-10 & 12.

If plaintiff had used the verification process, perhaps the entire dispute would have been avoided and the confusion regarding the settlement of the Account with Nationwide would have been cleared-up; regardless, per the FDCPA, with plaintiff's failure to respond to F&G's

communications, F&G was permitted to assume the debt was valid. *See* 15 U.S.C. § 1692g(a)(3); *see also Palmer v. I.C. Sys., Inc.*, 2005 WL 3001877, *5 (N.D. Cal. Nov. 8, 2005) ("This demonstrates that, absent a dispute, the debt collector is allowed to assume the debt is valid."); *Bleich v. Revenue Maximization Grp., Inc.*, 233 F.Supp.2d 496, 500 (E.D. N.Y. 2002) ("Had Plaintiff exercised her rights under the FDCPA to obtain debt verification, it is entirely likely that litigation would have been avoided. Indeed, this is likely the reason Congress chose to include the debt validation procedure in the Act. The specific procedure for debt validation must have been intended to avoid FDCPA litigation based solely on the debt's validity as communicated to the collection agency by the creditor.").

This case is similar to *Young v. Thieblot Ryan, P.A.*, 2012 WL 6698632 (D. Md. Dec. 21, 2012). In *Young*, like here, the plaintiff alleged the attorney debt collector made false allegations in the state court lawsuit. In rejecting the plaintiff's claims, the court observed:

> Notably, after [plaintiff] received the Collection Letter, [he] did not notify defendant of a dispute as to the validity or amount of the asserted debt. Indeed, the first time [plaintiff] communicated to defendant his dispute as to the debt was when he filed the Complaint in this case. Put another way, before defendant filed the collection suit in State court, [the attorney] had no basis to doubt the veracity or basis of the claim asserted by [the creditor], and there was no discoverable error which would preclude its reliance on [the creditor's] referral.

*Young*, 2012 WL 6698632 at *7. This Court should follow *Young* and dismiss plaintiff's claims here.

**_Fourth_**, a debt collector (and certainly an attorney) may reasonably rely upon the information provided by the client. *See, e.g., Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006); *Howe v. Reader's Digest Ass'n, Inc.*, 686 F.Supp. 461, 467 (S.D. N.Y. 1988) ("[The debt collector] reasonably relied on the accuracy of the information provided to it by [the creditor] regarding unpaid bills."); *Taylor v. Luper, Sheriff & Niedenthal*

*Co., L.P.A.*, 74 F.Supp.2d 761, 765 (S.D. Ohio 1999) ("By the same token, lawyers should not be held strictly liable when they discharge their ethical duty to a client by asserting in good faith a claim which is ultimately rejected by a court."); *In re Cooper*, 253 B.R. 286, 292 (Bankr. N.D. Fla. 2000) ("Attorneys and debt collectors are entitled to rely on the information they receive from the creditor.  They are not held strictly liable when they mistakenly attempt to collect amounts in excess of what is due, if they reasonably relied on information provided by their clients.") (gathering authorities); *Ducrest v. Alco Collections, Inc.*, 931 F.Supp. 459, 462 (M.D. La. 1996) ("[T]he court finds that defendant may rely on representations made by its clients and that defendant did not have any duty to independently investigate the claims presented by its clients[.]"); *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D. Del. 1991) ("Generally, a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past.").  And state court procedural or ethical rules are *not* heightened merely because the lawsuit seeks payment of a debt, or the attorney filing the lawsuit is considered a debt collector.  *See Amond v. Brincefield, Hartnett & Associates, P.C.*, 1999 WL 152555, *3 (4th Cir. 1999) (unpublished).  Here, F&G reasonably relied upon the information provided by American Express, showing plaintiff owed the debt.

**_Fifth_**, contrary to plaintiff's allegations, it is well settled that a party is *not* required to marshal all of its evidence to establish liability *prior to filing suit*.  Therefore, plaintiff's contention that F&G was required to have all supporting documents to establish liability in-hand before filing suit against him is wrong.  *See Hasbrouck v. Arrow Fin. Servs. LLC*, 2011 WL 1899250, *5 (N.D. N.Y. May 19, 2011) ("The majority of district and appellate courts have routinely held that, 'the filing of a collection lawsuit without the immediate means of proving the debt does not violate the FDCPA.'"); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th

16

Cir. 2006) (Filing a collection lawsuit without the immediate means of proving the debt is not a false representation under the FDCPA because an attorney does not "implicitly represent by filing the [lawsuit] that [he] ha[s] in hand the means to prove [the] claims."); *Hill v. Javitch, Block & Rathbone, LLP*, 574 F.Supp.2d 819, 824 (S.D. Ohio 2008) ("[N]either the Rules of Civil Procedure nor the FDCPA require debt collectors to be certain they will prevail on their claims before filing suit for collection. *Harvey* and other cases . . . establish that evidentiary issues concerning the debt can be fleshed out through discovery and exchange of pleadings.") (citations omitted); *Davis v. NCO Portfolio Mgmt., Inc.*, 2006 WL 290491, *3 (S.D. Ohio Feb. 7, 2006) ("[Plaintiff] essentially alleges that more of a paper trail should have been in the lawyers' hands or attached to the complaint. The FDCPA imposes no such obligation.").[4]

Moreover, debt collection lawsuits are not complicated. Either the debtor owes the debt or not. Very little information is needed to plead such a case. And imposing some heightened pleading burden for collection lawsuits is inappropriate. As several courts have ruled, the discovery process is the appropriate vehicle for exchanging additional, supporting information and documents in such cases. *Id.*

**Sixth**, as noted, pursuant to its agreement with American Express, NCO Financial acts as an agent for American Express and coordinates with outside counsel representing American Express in state court collection lawsuits. *See* **Exhibit Z**, Affidavit of Lisa Reed, at ¶ 13. As part of its role, NCO Financial provides account information and documents to the attorneys

---

[4] These cases ruled filing a collection lawsuit without documents in-hand to prove the debt is *not* a false or deceptive act under the FDCPA. The FDCPA imposes a lower strict liability standard, whereas the NYJL imposes a heightened "intent to deceive" standard. If filing a collection lawsuit without documents in-hand to prove the debt is not a violation of the lower standard set by the FDCPA for liability, then *a fortiori* such action is not a violation of the higher standard set by the NYJL.

17

representing American Express; such information and documents are obtained directly from American Express' system of record.  *Id.* at ¶ 14.

Approximately 2 weeks after the State Court Lawsuit was filed, on or about February 8, 2011, Paul Lavarta, an American Express representative, signed an affidavit averring (a) the Account had a balance of $2,752.01; (b) American Express "has a good a meritorious cause of action to which no valid defense or counterclaim exists;" and (c) his affidavit "is based on books and records of [American Express] kept in the usual course of its business and under my supervision and control."  *See* **Exhibit Q**, Affidavit of Paul Lavarta; **Exhibit X**, Affidavit of Amy Gavlik, at ¶¶ 14-15; **Exhibit Y**, Affidavit of Edward Damsky, at ¶¶ 14-15.  Mr. Lavarta's affidavit was provided to F&G to obtain judgment against plaintiff.  *Id.*

Further, during the pendency of the State Court Lawsuit, NCO Financial obtained and sent to F&G an American Express statement with a closing date of September 9, 2010.  *See* **Exhibit X**, Affidavit of Amy Gavlik, at ¶ 23; **Exhibit Y**, Affidavit of Edward Damsky, at ¶ 23. The statement showed plaintiff owed the same balance sought in the State Court Lawsuit ($2,752.01).  *Id.*  In other words, the statement matched the information previously sent to F&G and used to draft the State Court Lawsuit against plaintiff.

***Seventh***, plaintiff alleges NCO Financial's Attorney Network Standard Operating Procedures (the "Attorney Manual") "does not permit the affiliate law firms to communicate with the creditors, even though those same creditors are the nominal plaintiffs in the lawsuits filed[.]"  Dkt. No. 60, at ¶ 87.  Plaintiff's allegation is wrong, or misleading at best.

Version 4.0 of the Attorney Manual was applicable when F&G sued plaintiff on behalf of

18

American Express.  *See* **Exhibit Z**, Affidavit of Lisa Reed, at ¶ 21.[5]  In a section titled

"Communication," the Attorney Manual provides "[a]ll communications regarding accounts will

be conducted between the Attorney Firm and NCO only."  *Id.* at ¶¶ 22-23; **Exhibit AA**, Attorney

Manual, at p. 23.  The Attorney Manual further provides:

> Some Clients reserve the right to initiate communication directly with attorneys.
> In such situations, the Attorney Firms will, for the purposes of inventory control
> and tracking, notify NCO of the communication.  *Situations that warrant a Client
> communicating directly with Attorney Firms may include, but are not limited to*:
>
> 1        Counterclaims
> 2        Trial Notices (See Appendix G)
> 3        Discovery
> 4        Class Action suits

*Id.* (emphasis added).

Contrary to plaintiff's allegations, F&G was *not* prohibited from contacting American

Express or any other client per the Attorney Manual or any rule.  The Attorney Manual sets forth

a preferred process for obtaining information and documents.  This process was established to

ensure an efficient and timely flow of information and documents.   When possible, NCO

Financial, as the agent for American Express, was to be first contacted to obtain needed

information and documents.   NCO Financial would then obtain the information and documents

from the creditor client and forward such to the law firm.  As F&G attorney Joel D. Leiderman

testified, however, direct communication with the client occurred:  "We deal with American

Express directly on many occasions.  Either we go to them, they go to us, you know."  **Exhibit**

---

[5] Throughout his complaint, plaintiff cites and relies upon version 2.1 of the Attorney Manual.
*See* Dkt. No. 60, at ¶¶ 77-89.  That version of the Attorney Manual, however, was superseded by
version 4.0 in April 2010, and was inapplicable at the time plaintiff was sued in January 2011.

**O**, Deposition of Joel D. Leiderman (Volume I), at p. 88, lns. 2-4.[6]

*Eighth*, under New York law, "release" and "settlement" are affirmative defenses. *See* N.Y. C.P.L.R. § 3018(b). The defenses are waived if not specifically pled. *See, e.g., John T. Brady & Co., Inc. v. City of New York*, 429 N.Y.S.2d 530, 534 (N.Y. Sup. Ct. 1980) ("CPLR 3018 requires that the defense of release be specifically pleaded. If these rules are to have any prophylactic effect, a party in default should not be lightly relieved from their consequences."); *Richman v. Kauffman*, 388 N.Y.S.2d 147, 148 (N.Y. App. Div. 1976) ("release is an affirmative defense"); *Decosta v. Williams*, 462 N.Y.S.2d 799, 802 (N.Y. Sup. Ct. 1983) ("Since release is an affirmative defense which must be pleaded by the party asserting it (CPLR 3018(b)), the ultimate burden of proving the defense rests on the defendants, the parties asserting it."); *Boxberger v. New York, N.H. & H.R. Co.*, 142 N.E. 357 (N.Y. 1923).

Critically, plaintiff never asserted release or settlement as an affirmative defense in his Answer to the State Court Lawsuit. *See* **Exhibit F**, Plaintiff's Answer; **Exhibit X**, Affidavit of Amy Gavlik, at ¶¶ 16-18; **Exhibit Y**, Affidavit of Edward Damsky, at ¶¶ 16-18. And at least one court has ruled that such a failure constitutes a waiver even if the lawsuit is *knowingly filed* on a debt previously settled. *See DiIorio v. Gibson & Cushman of New York, Inc.*, 566 N.Y.S.2d 1 (N.Y. App. Div. 1990). The *DiIorio* court explained:

> Under CPLR 3018(b) release is an affirmative defense; plaintiff had no duty to assist defendants in pleading and proving the applicability of that defense . . . . Defendants' argument that the commencement of the action with knowledge of the release . . . constituted a fraudulent representation as to the ultimate validity of the action is simply untenable. *To undertake an action against a party with*

---

[6] Plaintiff also alleges NCO Financial prohibits law firms in the attorney network, such as F&G, from obtaining or reviewing documentation, or "media," on an account; in support of this contention, plaintiff cites to version 2.1 of the Attorney Manual. *See* Dkt. No. 60, at ¶¶ 89-90. Plaintiff's allegation is false and based upon a contrived reading of version 2.1 of the Attorney Manual, which was not even applicable when the State Court Lawsuit was filed.

*actual or constructive knowledge that a defense to the action may exist does not constitute a fraud upon the court; a defense may be waived by failure to plead and prove it, as is the case here.*

*Id.* at 2 (emphasis added).

Applying *DiIorio*, F&G is entitled to summary judgment on plaintiff's NYJL claim because there is nothing improper or fraudulent in filing a lawsuit on a claim that is subject to affirmative defenses, which can be (and in this case were) waived by failure to assert.

However, even if the Court were to reject *DiIorio*, F&G would still be entitled to summary judgment on plaintiff's NYJL claim: the undisputed evidence shows F&G was unaware that plaintiff settled the Account. To be clear, F&G filed the State Court Lawsuit in good faith believing the Account was owed. *See* **Exhibit O**, Deposition of Joel D. Leiderman (Volume I), at pp. 44-48, lns. 14-3. And upon learning the Account was settled, F&G promptly dismissed the State Court Lawsuit with prejudice, even though plaintiff never asserted release or settlement as an affirmative defense (as required by N.Y. C.P.L.R. § 3018(b)) and had not produced a single document evidencing the settlement. *See* **Exhibit I**, Stipulation of Dismissal; **Exhibit X**, Affidavit of Amy Gavlik, at ¶ 30; **Exhibit Y**, Affidavit of Edward Damsky, at ¶ 32.

**_Ninth_**, plaintiff did *not* produce a single document during the pendency of the State Court Lawsuit evidencing settlement of the Account. *See* **Exhibit X**, Affidavit of Amy Gavlik, at ¶¶ 26-27; **Exhibit Y**, Affidavit of Edward Damsky, at ¶¶ 26-27. In fact, all of the documents plaintiff received in response to the various subpoenas he issued showed a $2,752.01 balance owed—the same amount F&G sought to recover in the State Court Lawsuit. *Id.*

To make matters more confusing and difficult to sort out, plaintiff's counsel, Mr. Tusa, represented in correspondence to F&G attorney Amy Gavlik that plaintiff settled the Account with NCO Financial (in contrast to American Express) in 2009. *See* **Exhibit H**, 4/5/12 Tusa

Letter; **Exhibit X**, Affidavit of Amy Gavlik, at ¶ 25; **Exhibit Y**, Affidavit of Edward Damsky, at ¶ 25.   After receiving Mr. Tusa's letter, F&G confirmed with NCO Financial that the company did not settle the Account with plaintiff.   *See* **Exhibit X**, Affidavit of Amy Gavlik, at ¶ 28; **Exhibit Y**, Affidavit of Edward Damsky, at ¶ 29; **Exhibit Z**, Affidavit of Lisa Reed, at ¶ 29.

In summary, F&G completed a reasonable inquiry under the circumstances before filing the State Court Lawsuit.[7]   F&G did not file the lawsuit with the intent to deceive the state court or plaintiff.   F&G believed in good faith that the Account was owed.   Had F&G known the Account was settled, the law firm would not have filed the lawsuit.   Upon discovering the Account was settled, F&G promptly dismissed the lawsuit.   Plaintiff's NYJL claim should be dismissed.

## 2. Plaintiff Did Not Suffer Any Ascertainable Or Compensable Damages As A Result Of F&G's Actions

As noted, "an element of a claim under § 487 is that the attorney's deceit must have caused the plaintiff's damages."   *Cresswell v. Sullivan & Cromwell*, 771 F.Supp. 580, 587 (S.D. N.Y. 1991); *see also M'Baye*, 2007 WL 431881 at *13 ("A plaintiff also has to establish that damages were caused by the deceit."); *Lazer Elec. Corp. v. Cecchi*, 1997 WL 311925, *5 (S.D. N.Y. June 10, 1997) ("In order to state a claim for a violation of Section 487, [the plaintiff] must show that it had damages which were caused by [the attorney's] alleged deception[.]"); *Werner v. Katal Country Club*, 650 N.Y.S.2d 866, 869 (N.Y. App. Div. 1996) ("[The attorney's] deceit

---

[7] Plaintiff correctly observes F&G signed the state court complaint pursuant to N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1a.   *See* Dkt. No. 60, at ¶ 51, and Exhibit D; **Exhibit D**, State Court Complaint.   In pertinent part, the Rule provides:   "By signing a paper, an attorney or party certifies that, to the best of that person's knowledge, information and belief, formed after *an inquiry reasonable under the circumstances* . . . the presentation of the paper or the contentions therein are not frivolous as defined in section 130-1.1(c) of this Subpart[.]"   N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1a (emphasis added).   For the reasons discussed above, F&G's certification was proper.

must have caused plaintiff damage.  We are constrained to conclude that Supreme Court should have dismissed this cause of action due to plaintiff's failure to establish a nexus between [the attorney's] acts and [the plaintiff's] damages[.]").

Emotional distress damages are *not* recoverable under § 487; "pecuniary harm [i]s required to establish liability under the Judiciary Law." *New York City Transit Auth. v. Morris J. Eisen, P.C.*, 715 N.Y.S.2d 232, 238 (N.Y. App. Div. 2000); *see also Jaroslawicz v. Cohen*, 783 N.Y.S.2d 467 (N.Y. App. Div. 2004) (NYJL claim dismissed because the plaintiff failed to allege "pecuniary damages resulting from the alleged wrong."); *Morelli & Gold, LLP v. Altman*, 897 N.Y.S.2d 671, *13 (N.Y. Sup. Ct. 2009) (unreported) (The deceit must have "caused actual damages, *i.e.* 'pecuniary harm.'").

A showing of damages is required even if the evidence undeniably shows the attorney acted with the requisite "intent to deceive." *See DiPrima v. DiPrima*, 490 N.Y.S.2d 607, 608-09 (N.Y. App. Div. 1985) (where attorney was "undeniably engaged in activity with intent to deceive the court," § 487 claim nonetheless dismissed because "plaintiff failed to prove she was injured as a result of the deceit or collusion.").

As discussed above, plaintiff's NYJL claim fails because F&G did not act with the requisite intent to deceive the state court or plaintiff.  In addition, plaintiff's NYJL claim fails because plaintiff did not suffer any ascertainable or compensable damages as a result of F&G's actions.  *See* **Exhibit J**, Deposition of James LaCourte, at pp. 224-228, lns. 2-21.  Plaintiff did not pay F&G any money.  *Id.*  Nor did plaintiff pay for the services of an attorney to represent him.  *Id.* at pp. 110-113, lns. 15-9.  Plaintiff's counsel, Mr. Tusa, did not charge plaintiff for his services in the State Court Lawsuit and plaintiff owes him no money.  *Id.*  Mr. Tusa rendered his services as a favor based upon his friendship with plaintiff's uncle.  *Id.*

23

Further, while plaintiff generally asserts he incurred costs and lost wages arising from his attendance at a court-mandated hearing on December 23, 2011, he acknowledges he has not produced any documents to substantiate any loses or damages he allegedly incurred as a result of F&G's actions.  *See* **Exhibit J**, Deposition of James LaCourte, at pp. 13-14, lns. 21-13. Regardless, any costs or losses relating to plaintiff's appearance at the December 23, 2011 hearing are *not* attributable to F&G because plaintiff's attendance at the hearing was unnecessary.  The hearing notice states "[a]ll requests for adjournment must be made in person . . . *or in writing*, with notice to the opposing party."  *See* **Exhibit Y**, Affidavit of Edward Damsky, at ¶ 20 (emphasis added); *see also* **Exhibit J**, Deposition of James LaCourte, at pp. 124-126, lns. 2-3.  Neither plaintiff, nor Mr. Tusa, requested adjournment in writing; instead, plaintiff appeared in person at the December 23, 2011 hearing and advised the court he was represented by counsel.  *See* **Exhibit Y**, Affidavit of Edward Damsky, at ¶ 21.  The court adjourned the hearing because plaintiff's counsel was not present.  *Id.*  Plaintiff's NYJL claim should be dismissed.

## C. Plaintiff's Conspiracy Claim Should Be Dismissed

As an initial matter, "[u]nder New York law, there is no independent cause of action for civil conspiracy."  *Maersk, Inc. v. Neewra, Inc.*, 687 F.Supp.2d 300, 319 (S.D. N.Y. 2009).  "[I]t is well settled under New York law that 'a claim for civil conspiracy requires an independent actionable tort."  *In re Wachovia Equity Sec. Litig.*, 753 F.Supp.2d 326, 381 (S.D. N.Y. 2011). As explained above, plaintiff's NYJL claim fails; therefore, plaintiff's conspiracy claim likewise fails.

Moreover, plaintiff testified he has no facts to support his allegation that Defendants conspired to violate the New York Judiciary Law:

24

Q.      What facts do you have that the defendants conspired to violate the New
        York Judiciary Law?

MR. TUSA: Objection.  You may answer.

A.      None at this time.

**Exhibit J**, Deposition of James LaCourte, at p. 221, lns. 7-12.

Finally, the NYJL applies only to lawyers.  *See* N.Y. Judiciary Law § 487 ("An attorney or counselor who . . . .").  And although the NYJL covers "collusion" *for attorneys*, the statute does *not* create liability for *non-attorneys*, *non-law firms*.  Again, and as this Court has ruled, the ambit of the statute is limited.  *See Rafter v. Fleet Boston Fin. Corp.*, 2006 WL 1071753, *4 (S.D. N.Y. Apr. 20, 2006) ("By its express language, the above-referenced statute applies only to the conduct of a lawyer.  Several of the defendants in this action are corporations and are not within the ambit of the statute.  Therefore, to the extent that the plaintiff seeks to assert this claim against all of the defendants, she is not permitted to do so.").  Considering NCO Financial is not a law firm and does not fall within the ambit of the NYJL, the Court should dismiss plaintiff's NYJL conspiracy claim against NCO Financial.

## VI. CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's Second Amended Class Action Complaint with prejudice.  Defendants reserve the right to seek attorney's fees and costs for plaintiff's improper FDCPA claim under 15 U.S.C. § 1692k(a)(3) and improper  FCRA claim under 15 U.S.C. §§ 1681n(c) and 1681o(b).

Respectfully Submitted,

/s/ Michael D. Alltmont
David Israel, Esq.
Bryan C. Shartle, Esq.
Michael D. Alltmont, Esq.
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3850 N. Causeway Blvd., Suite No. 200
Metairie, LA 70002
(504) 828-3700
fax (504) 828-3737

Aaron R. Easley, Esq.
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
200 Route 31 North, Suite 203
Flemington, NJ 08822
(908) 751-5940
fax (908) 751-5944

James Schultz, Esq.
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
55 West Monroe Street, Suite 1120
Chicago, Illinois  60603
(312) 578-0990
fax (312) 578-0993

Attorneys for NCO Financial Systems, Inc. and
Forster & Garbus, LLP

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 19th day of November 2013, a copy of NCO FINANCIAL SYSTEMS, INC. AND FORSTER & GARBUS, LLP'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel, as described below.  Parties may access this filing through the Court's system.

Oren S. Giskan
Jason L. Solotaroff
Catherine E. Anderson
Giskan, Solotaroff, Anderson & Stewart, L.L.P.
11 Broadway
Suite 2150
New York, NY 10004
(212) 847-8315
Fax: (646) 520-3236
Email: ogiskan@gslawny.com
        jsolotaroff@gslawny.com
        canderson@gslawny.com

Joseph S. Tusa
Tusa P.C.
1979 Marcus Avenue, Suite 210
Lake Sucess, NY 11042
(516) 622-2212
Fax: (516) 706-1373
Email: joseph.tusapc@gmail.com

Attorneys for Plaintiff

By:    /s/ Michael D. Alltmont
       Michael D. Alltmont, Esq.
       Attorney for Defendants,
       NCO Financial Systems, Inc. and
       Forster & Garbus, LLP

27