## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES LACOURTE, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br> - against –<br><br>JPMORGAN CHASE & CO., NCO GROUP, INC. n/k/a EXPERT GLOBAL SOLULTIONS, INC., NCO FINANCIAL SYSTEMS, INC., ONE EQUITY PARTNERS a/k/a ONE EQUITY PARTNERS HOLDING CORPORATION a/k/a ONE EQUITY PARTNERS LLC a/k/a ONE EQUITY PARTNERS II, L.P., FORSTER & GARBUS LLP and DOES 1 THROUGH 150 LAW FIRM AFFILIATES OF NCO GROUP, INC. AND NCO FINANCIAL SYSTEMS, INC.,<br><br>       Defendants | Case No. 12-CV-9453(JSR)<br><br>Jed S. Rakoff, USDJ |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TUSA P.C.**
Joseph S. Tusa.
1979 Marcus Avenue, Ste. 201
Lake Success, NY  11042
Tel. (516) 622-2212

**GISKAN SOLOTAROFF ANDERSON**
 **& STEWART LLP**
Catherine E. Anderson
Oren Giskan
Jason Solotaroff
11 Broadway, Ste. 2150
New York, New York 10004
Tel. (212) 847-8315

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ i

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    PROCEDURAL HISTORY ......................................................................................... 1

III.   STATEMENT OF FACTS ........................................................................................... 3

IV.    ARGUMENT ................................................................................................................ 8

       A. Legal Standard ....................................................................................................... 9

       B. Summary Judgment Must Be Denied On Plaintiff's Claim For Violation of the
          New York Judiciary Law § 487 ............................................................................. 9

              1.   Plaintiff Has Shown At Least One Single, Intentional, Deceitful Act of
                   Defendants F&G ......................................................................................... 9

              2.   Plaintiff Has Sustained Damages .............................................................. 15

              3.   Defendant F&G's Alleged Defenses Should Be Rejected ........................ 15

       C. Plaintiff's Claim for Civil Conspiracy To Violation Section 487 Against All
          Defendants Should Proceed to Trial ................................................................... 17

       D. Factual Questions Remain as to Whether Defendants Violated the Remaining
          FDCPA Claim ...................................................................................................... 18

CONCLUSION ............................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Agostino v. Quest Diagnostics, Inc.,*
    2011 U.S. Dist. LEXIS 127904 (D.N.J. Nov. 3, 2011)....................................................16

*Diaz v. Portfolio Recovery Assocs., LLC,*
    2012 U.S. Dist. LEXIS 72724 (E.D.N.Y. May 23, 2012) .............................................15

*Easterling v. Collecto, Inc.,*
    692 F.3d 229 (2d Cir. 2012)........................................................................................18

*Hasbrouck v. Arrow Fin. Servs. LLC,*
    2011 U.S. Dist. LEXIS 53928 (N.D. N.Y. May 19, 2011)............................................17

*Holt v. KMI-Continental, Inc.,*
    95 F.3d 123 (2d Cir. 1996)............................................................................................9

*Hooks v. Forman, Holt, Eliades & Ravin, LLC,*
    717 F.3d 282 (2d Cir. 2013)...................................................................................19, 13

*Howe v. Reader's Digest Ass'n, Inc.*
    686 F.Supp. 461 (S.D.N.Y. 1988) ..............................................................................16

*In re Blackwood Assocs., L.P.,*
    153 F.3d 61 (2d Cir. 1998).............................................................................................9

*Levano v. Capital One Bank,*
    NYLJ 1202629074203 (Sup. Ct. Nassau Co. Nov. 25, 2013)......................................12

*Lewis v. Rosenfeld,*
    138 F. Supp. 2d 466 (S.D.N.Y. 2001).........................................................................17

*McCarthy v. Dun & Bradstreet Corp.,*
    482 F.3d 184 (2d Cir. 2007)...........................................................................................9

*Ramos v. Baldor Specialty Foods, Inc.,*
    687 F.3d 554 (2d Cir. 2012)...........................................................................................9

*Sykes v. Mel Harris & Assocs., LLC,*
    757 F. Supp. 2d 413 (S.D.N.Y. 2010)......................................................................9, 14

**New York State Cases**

*Amalfitano v. Rosenberg*,
    12 N.Y.3d 8 (N.Y. 2009) ...................................................................10, 14, 15

*American Express Bank, FSB v. Dalbis*,
    30 Misc. 3d 1235(A (N.Y. Civ. Ct. 2011) ....................................................11

*American Express Centurion Bank v. Badalamenti*,
    30 Misc. 3d 1201(A) (N.Y. Dist. Ct. 2010) ..................................................12

*American Express Centurion Bank v. Bajek*,
    29 Misc. 3d 1226(A) (N.Y. Sup. Ct. 2010)...................................................12

*Brackett v. Griswold*,
    112 N.Y. 454 (N.Y. 1889) ............................................................................18

*Capital One Bank (USA), N.A. v. Mebane*,
    2011 N.Y. Misc. LEXIS 6577 (N.Y. City Ct. Dec. 20, 2011)........................12

*Capital One Bank USA NA v. Joseph*,
    41 Misc. 3d 1214(A (N.Y. Dist. Ct. 2013) ...................................................12

*Cunningham v. Hagedorn*,
    72 A.D.2d 702 (N.Y. App. Div. 1st Dep't 1979) .....................................17, 18

*Danahy v. Meese*,
    84 A.D.2d 670 (N.Y. App. Div. 4th Dep't 1981)...........................................18

*Schindler v. Issler & Schrage, P.C.*,
    262 A.D.2d 226 (N.Y. App. Div. 1st Dep't 1999) .........................................14

*Shields v. Carbone*,
    78 A.D.3d 1440 (N.Y. App. Div. 3d Dep't 2010).........................................15

Plaintiff James LaCourte ("Plaintiff" or "LaCourte") respectfully submits this Memorandum of Law in Opposition to defendants NCO Financial Systems, Inc.'s ("NCOF") and Forster & Garbus, LLP's ("F&G") Motions for Summary Judgment.

## I.   **PRELIMINARY STATEMENT**

NCOF hires law firms such as F&G to file collection lawsuits by the thousands for creditors such as American Express when they cannot collect through non-litigation channels. Through the practices detailed herein, and in the accompanying LR 56.1 Response and Counter Statement of Facts and Declaration of Joseph S. Tusa (annexing Exhibits 1 – 83), Plaintiff has alleged that F&G violated NYJL Section 487, and NCOF conspired with F&G to violate NYJL Section 487, in the following ways:

1. Defendants fail to disclose to the state court that the creditor plaintiff (American Express) has no retainer or relationship with F&G.

2. Defendants fail to disclose to the state court (or the consumer defendant) that NCOF is involved in the lawsuit filed against the consumer.

3. F&G fails to reasonably investigate claims before filing and may not communicate with the creditor plaintiff.

4. NCOF fails to pass on disputes of the debt to F&G.

5. Defendants do not have the backup documents to prove their claim against the consumer in the collection lawsuit and often cannot get them.

6. The complaints in the collection lawsuits are generated by a computer and the creditor plaintiff never reviews the complaint.

7. Defendants prepare affidavits for the creditor that are not adequately reviewed before signing and fail to disclose to the state court that the creditor neither prepares the affidavit or adequately reviews them.

## II.   **PROCEDURAL HISTORY**

This action was commenced on December 28, 2012.  On February 27, 2013, Plaintiff filed his First Amended Complaint ("FAC").  Defendants moved to dismiss the FAC.  By Order

1

dated April 25, 2013, and Memorandum and Order dated September 4, 2013, this Court granted

in part, and denied in part, Defendants motion to dismiss the FAC.  The Court upheld Plaintiff's

claims (1) for violation of the New York Judiciary Law   ("NYJL") Section 487 against

Defendant Forster & Garbus LLP ("F&G"); and (2) for civil conspiracy to violate Section 487

against F&G and NCOF.  With respect to Plaintiff's claim against F&G for violation of the

NYJL, § 487, this Court held, in pertinent part:

> [A]s LaCourte points out, by signing and filing the complaint in the New York
> Action, Forster & Garbus certified that the contentions therein – including that
> LaCourte owed an unpaid debt to American Express – were not "frivolous," based
> on "an inquiry reasonable under the circumstances."  FAC ¶ 50.  According to the
> complaint, after LaCourte settled and paid off his debt, received further collection
> notices, and disputed them, Forster & Garbus nevertheless filed  the New York
> Action without reviewing the back-up documents or otherwise verifying with
> American Express that the debt was in fact valid and unpaid.  Indeed, under the
> NCO Attorney Manual, Forster & Garbus was contractually prohibited from
> contacting American Express. Then, after NCO Financial  learned that LaCourte
> had "filed a complaint which can turn into a lawsuit," a simple email to the
> collection agency that had previously handled LaCourte's account was enough to
> reveal, within a single day, that LaCourte's debt had already been paid.  FAC, ex.
> F.  These allegations are more than sufficient to raise a reasonable inference that
> Foster & Garbus knowingly failed to conduct a reasonable investigation before
> filing the New York Action.

 September 4, 2013 Memorandum and Order at 24-25, Docket Entry No. 80.

With respect to Plaintiff's claim against Defendants NCOF and F&G for civil conspiracy

to violate NYJL Section 487, this Court held, in pertinent part:

> With respect to the NYJL, however, LaCourte's allegations amply support a civil
> conspiracy claim against Foster & Garbus and NCO Financial.  According to the
> FAC,  after LaCourte disputed his debt, Foster & Garbus commenced the New
> York Action without taking reasonable steps to confirm whether the debt was in
> fact unpaid.  Foster & Garbus  did so at NCO Financial's direction and in
> accordance with the NCO Attorney Manual, which restricted Foster & Garbus's
> ability to conduct a reasonable pre-filing investigation.   Indeed, the Manual
> dictated that any inquiries Foster & Garbus might wish to make to American
> Express had to go through NCO Financial.  Not surprisingly, it was ultimately
> NCO Financial that discovered, through a simple email exchange, that LaCourte
> had already settled and paid off his debt.  These allegations more than plausibly

suggest that NCO Financial and Foster & Garbus knowingly and intentionally agreed that Foster & Garbus would commence the New York Action in violation of the NYJL.

*Id.* at 26-27.

## III.   **STATEMENT OF FACTS**

Creditors, such as American Express, engage NCOF as independent contractors to hire law firms to file collection lawsuits against the creditors' customers. Plaintiff's LR 56.1 Counter Statement at ¶¶ 2, 3, 17, 23. Creditors send electronic files to NCOF containing minimal information about the consumers' accounts, generally limited to the amount of the debt and the consumer's demographic information. Counter LR 56.1 Statement at ¶65.  On occasion, NCOF would attempt to collect on these accounts before placing them with law firms.  Counter LR 56.1 Statement at ¶7.  When it does so, NCOF claims to provide the consumer with 30 days to dispute the debt.  Counter LR 56.1 Statement at ¶153.  NCOF attempted to collect on the account of the Plaintiff in this lawsuit, James LaCourte. Plaintiff's Response to Defendants' 56.1 Statement ("Response") at ¶9, Counter LR 56.1 Statement at ¶151.

Here, all parties agree that Plaintiff did dispute the debt within 30 days, during a recorded telephone call with an NCOF debt collector.  LR 56.1 Response at ¶155.  Defendant NCOF entirely disregarded that dispute and continued to attempt to collect the debt, transferred the debt to Defendant F&G, and sued Plaintiff on the debt without disclosing to Plaintiff or the Court that the debt was in dispute and was not supported by the documentary record (which Defendants failed to review).   Counter LR 56.1 Statement at ¶¶ 166, 167, 172-174, 178.  All parties here agree that when Defendants began their collection efforts, Plaintiff did not owe any debt to American Express, and had fully-settled and repaid that debt months prior.  Counter LR 56.1 Statement at ¶¶ 149, 150.

As described below, the Defendants' litigation processes which are challenged in this case make investigation of fact concerning debt validity nearly impossible. More likely, Defendants do not care to learn whether debts are valid because the economics of their business model do not afford them the time or the resources necessary to do so. As a result, consumers are abused, and courts are deceived.

### The Relationships Between the Creditors, Defendant NCOF and Defendant F&G

NCOF has no retainer agreement with the creditors. Counter LR 56.1 Statement at ¶¶ 21, 195. The agreements between the creditors and NCOF specify that NCOF is an independent contractor, not an agent of the creditor. Counter LR 56.1 Statement at ¶9. Like NCOF, F&G also has no retainer agreement with the creditor in whose name the debt collection lawsuit has been brought by F&G. Counter LR 56.1 Statement at ¶21.

NCOF places credit accounts with F&G and many other law firms inside and outside New York for the filing of state debt collection lawsuits. Counter LR 56.1 Statement at ¶23. F&G attempts to collect on these accounts. Counter LR 56.1 Statement at ¶27. If unsuccessful in the first few weeks, F&G files a lawsuit against the consumer in the name of the creditor. Counter LR 56.1 Statement at ¶¶ 49, 112. F&G has no choice but to file lawsuits quickly if they want NCOF's business, as NCOF's mandatory policies and procedures demand that lawsuits be filed quickly (within 30 to 60 days) and judgments be obtained immediately thereafter. Counter LR. 56.1 Statement at ¶¶ 104, 112. Failure to comply with NCOF's financial performance metrics will results in threats of lost business and the removal of accounts. Counter LR 56.1 Statement at ¶¶86-88.

Since 2009, F&G has collected over $38 million, and has earned more than $8 million in revenue, by filing debt collection lawsuits at NCOF's direction in New York State alone. Counter LR 56.1 Statement at ¶¶ 101, 103.

Neither F&G nor NCOF disclose to the New York state courts that it is NCOF, and not a bank or creditor plaintiff, that both hires F&G and directs the filing of the lawsuits.  Counter LR 56.1 Statement at ¶ 130.  F&G does not disclose to the state courts that it has no retainer with the creditor plaintiff.  Counter Statement at ¶ 131.  Nor does F&G disclose to the state courts that it is acting solely at the direction of NCOF.  Counter LR 56.1 Statement at ¶¶ 130, 132.  In fact, nowhere in the debt collection complaints does F&G mention the existence of NCOF.

### The NCOF Business Model Prevents Pre-Suit Investigation And Relies On Robo-Signing

F&G does no meaningful investigation of the claims asserted. Counter LR 56. 1 Statement at ¶¶ 129, 187-190.  The F&G attorney responsible for signing the complaint also signs hundreds, if not thousands, of complaints each week.  Counter LR 56.1 Statement at ¶125. Neither the creditor nor NCOF reviews the complaint before filing.  As per NCOF's policies and procedures, F&G may not communicate with the creditor, except in rare instances, and rarely elects to do so. Counter LR 56. 1 Statement at ¶¶ 52, 53.  The debt collection complaints filed by F&G are generated by a computer and filed by the **thousands per week**.  Counter LR 56.1 Statement at ¶¶ 125, 126.

F&G attempts to move these cases as quickly as possible to judgment. It requests affidavits necessary for entry of a default judgment at the time it files the lawsuit. Counter LR 56.1 Statement at ¶133.  If a complaint is answered, it is assigned to an attorney at F&G who is responsible for 750 files at a time.  Counter LR 56.1 Statement at ¶127.

The affidavits used to support entry of a default judgment are generated by NCOF, not the creditor.  Counter LR 56.1 Statement at ¶61.  There is no disclosure in the affidavits that they were created by NCOF.  Counter LR 56.1 Statement at ¶ 64.  In the case of American Express, NCOF creates and sends to American Express "stacks" of affidavits at a time.  Counter LR 56.1 Statement at ¶212.  The employee at American Express, Paul Lavarta, would sign the stack of affidavits within an hour with no investigation of the facts contained in the affidavits, other than matching the balance allegedly due with an electronic file.  Counter LR 56.1 Statement at ¶ 213.  This practice is commonly known as "robo-signing."  Given the New York courts' appropriately harsh evidentiary treatment of robo-signed affidavits in debt collection cases, including robo-signed affidavits submitted by F&G and for American Express, neither F&G nor NCOF disclose to the New York courts that affidavits are prepared by NCOF, and not the affiants, their companies or anyone with personal knowledge.  If they did, their motions for default judgment would be denied each and every time.

F&G only makes money if it collects on the accounts placed by NCOF.  Counter LR 56.1 Statement at ¶42.  In order to succeed, it must file cases in huge numbers. To maintain the necessary volume, F&G must file without investigation, obtain affidavits in bulk, and hope that most cases result in a default judgment without the expenditure of actual attorney time and resources.  All of this is concealed from the New York State courts in which these suits are filed.

**Plaintiff LaCourte**

American Express transferred Mr. LaCourte's account to NCOF in October 2010.  NCOF attempted to collect on the account. Counter LR 56.1 Statement at ¶151.  LaCourte informed the collector from NCOF that he had settled with American Express and paid off the full settlement

amount. Counter LR 56.1 Statement at ¶159.   Nevertheless, NCOF passed on LaCourte's account to F&G for suit.  Counter LR 56.1 Statement at ¶166.

F&G filed suit against LaCourte in January 2011.  LR 56.1 Response at ¶ 38.  LaCourte filed an Answer, again disputing the validity of the false debt.   Counter LR 56.1 Statement at ¶¶ 191-193.

Only after LaCourte filed his Answer, did F&G request LaCourte's account statements from NCOF.  Counter LR 56.1 Statement at ¶¶ 173-174.  After nearly a year of requests to NCOF (F&G was prohibited from requesting the statements directly from American Express), F&G obtained LaCourte's last statement. The last statement indicated that Mr. LaCourte had made a payment on the account, a fact that F&G was unaware of when it sued LaCorute. Counter LR 56.1 Statement at ¶ 145.  F&G might not have sued LaCourte if it was aware of the last payment.  Counter LR 56.1 Statement at ¶ 146.

F&G escalated its request of for additional statements but neither NCOF nor American Express ever provided them to F&G.  Counter LR 56.1 Statement ¶ 173.  LaCourte eventually obtained them through a subpoena and demonstrated that he had settled the debt prior to the time F&G sued him.  LR 56.1 Response at ¶¶ 78-82; Counter LR 56.1 Statement at ¶ 138.  F&G dismissed the case with prejudice, admitting the debt was never owed, and admission they have repeated in this action. Counter LR 56.1 Statement at ¶¶ 147, 148.  F&G never sought the consent of its "client" American Express to dismiss the case.  Counter LR 56.1 Statement at ¶ 180.  In fact, during the entirely of F&G involvement with LaCourte, they never communicated with American Express about him or his account. Counter LR 56.1 Statement at ¶¶ 179, 180. Not once.  The reason is that NCOF's mandatory policies and procedures generally forbade communication between the law firms and their own creditor clients in the state debt collection

lawsuits.  Counter LR 56.1 Statement at ¶¶ 52, 53.  NCOF made sure that it called all the shots, and was the only one directing the law firm's litigation efforts.  This Court has on multiple prior occasions expressed its dim view of that policy.  Counter LR 56.1 Statement at ¶ 39.

LaCourte's experience is not the only evidence that the information relied upon by F&G was not reliable. Counter LR 56.1 Statement at ¶¶ 89-94, 236-262.

The economics of the situation dictate that NCOF and F&G conduct its business in this manner. By way of example, F&G stood to make roughly 20% of the $2700 it sued LaCourte for.  At best, F&G would recover approximately $540. No law firm can litigate a case for $540. Instead, F&G must count on the fact that most consumers will not answer and F&G can swiftly move to enter a default judgment.

If the New York State courts knew about all the shortcuts taken by the Defendants, they would rarely, if ever, enter judgment against consumers in cases filed by the Defendants, especially where, as here, the law firm does not even have an attorney-client relationship with the creditor plaintiff which it purports to represent in the pleadings.  There can be no doubt that F&G violated NYJL §487, and that NCOF conspired with F&G to commit these violations.

## IV.   <u>Argument</u>

This case is not appropriate for summary judgment. This Court has already ruled that Plaintiff has made out a claim for violation of the judiciary law and conspiracy.  Discovery has confirmed that Defendant F&G knowingly failed to conduct any independent investigation, let alone "a reasonable investigation before filing the New York Action", *see* September 4, 2013 Memorandum and Order at 25, Docket Entry No. 80. and that "NCO Financial and Foster & Garbus knowingly and intentionally agreed that Foster & Garbus would commence the New York Action in violation of the NYJL." *Id*. at 27.  Defendants' motion for summary judgment

must be denied.  The only thing that remains is for a jury to resolve the remaining factual disputes and determine if the Defendants deceived the courts of the State of New York.

A.    **Legal Standard**

Summary judgment is appropriate only where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.  *See In re Blackwood Assocs., L.P.*, 153 F.3d 61, 67 (2d Cir. 1998). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.,* 687 F.3d 554, 558 (2d Cir. 2012) (internal quotations omitted).  "If there is evidence as to any material fact from which an inference can be drawn in favor of the non-movant, summary judgment is unavailable." *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996).

B.    **Summary Judgment Must Be Denied On Plaintiff's Claim For Violation of the New York Judiciary Law § 487**

1.    **Plaintiff Has Shown At Least One Single, Intentional, Deceitful Act of Defendants F&G**

The NYJL §487 provides that "any attorney who has engaged in 'any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party' is guilty of a misdemeanor and liable for damages." *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 428-429 (S.D.N.Y. 2010), citing NYJL §487.  The purpose of Section 487 is to protect the

integrity of the truth-seeking process in the New York courts. *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978) ("the concern is for the integrity of the truth-seeking processes of the New York courts")  All that is required for liability under Section 487 is for Plaintiff to show a *single, intentional deceitful or collusive act* by Defendant F&G.  *Amalfitano v. Rosenberg*, 533 F.3d 117 (2d Cir. 2008) (holding that liability of attorneys under Section 487 may be predicated on a single intentional deceitful or collusive act and rejecting the additional requirement, which Defendants here argue, of also showing a "chronic and extreme pattern of legal delinquency.").

F&G has made the following misrepresentations and omissions of material fact in the course of debt collection litigation and, as a result, has obfuscated and thwarted the truth-seeking process of the New York court system:

● F&G purports in the pleadings to represent the creditor and to have brought the debt collection litigation on behalf of its client, the creditor, when in fact, F&G has no retainer agreement or attorney-client relationship with the creditor that it purports to represent.  *See* New York Rules of Professional Conduct, Rule 1.5(c) (requiring written retainer agreement in contingency fee cases); *see also*, 22 NYCRR § 1215.1 (requiring an attorney either to provide a written engagement letter to a client or enter into a signed written retainer agreement with a client before the engagement begins or within a reasonable time thereafter.).  Indeed, Defendant F&G is largely prohibited from communicating with the creditor, and instead must direct all communications through NCOF.  Defendants' counsel conceded the communication restrictions between NCOF's creditor clients and NCOF's ANS law firms, even when state court lawsuits are filed by the ANS law firms in the names of the creditor clients.  As this Court has held: "Indeed, under the NCO Attorney Manual, Foster & Garbus was contractually prohibited from contacting American Express.  It is curious, to say the least, that an attorney is prohibited by a

private contract from contacting the very entity in whose name he sues." Rather, it is NCOF, and not the creditor, who is consulted by F&G regarding dispositive events in the lawsuit, such as dismissal with prejudice.

- F&G fails to disclose the involvement of NCOF in the lawsuit and that NCOF, and not the creditor plaintiff, is directing the lawsuit.

- F&G fails to disclose that the complaints used in these lawsuits are entirely computer generated and that the plaintiff, the creditor, never reviews the complaint.

- F&G commences these lawsuits to collect on alleged debts, knowing full well that any consumer dispute concerning the alleged debt intentionally is not passed on or otherwise disclosed to F&G. F&G nevertheless fails to investigate claims prior to filing the lawsuits. F&G also knows that in most cases, it will never have access to the documents necessary to prove the claims in the complaint.  Indeed, NCOF prohibits F&G's access to the documents necessary to prove the alleged claims, absent exceptional circumstances.  Nevertheless, F&G provides sworn certifications as to the accuracy of the information contained in the pleadings.

- F&G and NCOF prepare affidavits for the creditor that are insufficiently reviewed before signing and further fail to disclose to the court that the creditor neither prepares nor adequately reviews the affidavits before submitting to the court.  The New York courts have termed the practice of signing a stack of affidavits without any meaningful investigation, especially when the affidavits were prepared by third party without personal knowledge, as "robosigning." *American Express Bank, FSB v Dalbis*, 30 Misc. 3d 1235(A), 1235A (N.Y. Civ. Ct. 2011) (The "affidavit of facts in support of plaintiff's motion for default judgment" has all the trappings of a "robo-document." It begins 'State of New York; County of New York.'  The first line of the affidavit states: 'I   , hereby certify as follows:' The blank line is competed by a two-

line stamp 'Marc Davis, Assistant Custodian of Records.' It is followed by a paragraph beginning 'I am the Custodian of Records' or the 'Assistant Custodian of Records.' The latter designation is checked"); *see also*, *Levano v. Capital One Bank*, NYLJ 1202629074203 (Sup. Ct. Nassau Co. Nov. 25, 2013) (***Forster & Garbus LLP counsel for bank***; "The Court notes that the Ubini Affidavit, on its face, bears certain indicia of 'robo-signing' that provoke heightened scrutiny of the application, notwithstanding the absence of opposition."); *Capital One Bank USA NA v Joseph*, 41 Misc. 3d 1214(A), 1214A (N.Y. Dist. Ct. 2013) ("The affidavit, on its face, has the look and feel of a 'robo-signed affidavit' that was prepared in blank, in advance, without knowing the identity of the person who would be asked to sign it. This fact, by itself, gives the Court pause. *See American Express v Badalamenti, supra*."); *American Express Centurion Bank v Badalamenti*, 30 Misc. 3d 1201(A), 1201A (N.Y. Dist. Ct. 2010) ("The affidavit at hand has the look and feel of a 'robo-signed' affidavit that was 'prepared in blank in advance of knowing who would sign the affidavit.' *See American Express Centurion Bank v. Bajek*, 29 Misc. 3d 1226(A), 918 N.Y.S.2d 396, 2010 NY Slip Op 52005U, at fn. 2 (N.Y. Sup. Ct. 2010) (expressing concern whether plaintiff's affidavits involve 'robosigning'); *Capital One Bank (USA), N.A. v Mebane*, 2011 N.Y. Misc. LEXIS 6577 (N.Y. City Ct. Dec. 20, 2011) ("Finally, defendant's memorandum includes a lengthy, tangential discussion of the practice of 'robo-signing,' whereby large companies employ people to sign documents all day long, the contents of which they know nothing. Most of the cases cited deal with affiants who are employees of assignee banks and who are unable to authenticate documents that are from the original lenders.").

With respect to the intentional false representations and omissions of material fact made to the New York state court and Plaintiff James LaCourte:

12

● F&G commenced legal action (the "LaCourte Action") against Plaintiff based on material misrepresentations of fact, including (1) the intentionally false representation that F&G represented American Express when in fact, it had no attorney-client relationship with American Express, (2) that Plaintiff owed a debt to American Express, and (3) that Plaintiff agreed he owed a debt to American Express of $2,752.01, when in fact, Plaintiff disputed and did not owe the debt, as a cursory review of American Express's records would have shown.

● F&G falsely represented in the LaCourte Action complaint that "Plaintiff [American Express] stated an account to Defendant [LaCourte] without objection by Defendant [LaCourte]." This statement also was knowingly false. Prior to the commencement of the LaCourte Action, Plaintiff had informed F&G and its client, NCOF, that he did not owe the debt to American Express. F&G argues that Plaintiff failed to dispute the alleged debt in writing. Defendant's argument is without merit because either an oral or written dispute may suffice. *See Hooks v. Forman, Holt, Eliades & Ravin, LLC,* 717 F.3d 282 (2d Cir. 2013) (holding that consumers may dispute a debt orally or in writing; "The right to dispute a debt is the most fundamental of those set forth in § 1692g(a)").

● Despite these material misrepresentations and omissions, F&G filed a sworn certification with the court that the allegations in the LaCourte Action complaint were "to the best of that person's knowledge, information and belief formed *after an inquiry reasonable under the circumstances*, (1) the presentation of the paper of the contentions therein are not frivolous as defined in section 130-1.1(c) of this Subpart, and (2) where the paper is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in

13

any fee earned therefrom, and (ii) the matter was not obtained in violation of 22 NYCRR 1200.41a." (emphasis added).

In *Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 15 (N.Y. 2009), the court upheld claims for violation of the NYJL §487 where, as here, "a party commence[d] an action grounded in a material misrepresentation of fact."    Moreover, F&G's withholding of known material information from the court is itself the equivalent of affirmative misrepresentations of fact:

> It is well settled that when there is a duty to speak, silence may very well constitute fraudulent concealment. . . which is itself the equivalent of affirmative misrepresentations of fact. . . This is especially true where an officer of the court owes such an obligation to the tribunal (Code of Professional Responsibility DR 7-102 [A] [3] [22 NYCRR 1200.33  (a) (3)])

*Schindler v. Issler & Schrage, P.C.,* 262 A.D.2d 226, 229 (N.Y. App. Div. 1st Dep't 1999) (granting summary judgment in favor of plaintiff on his claim against defendant law firm for violation of NYJL §487) (internal citations omitted).

In *Sykes*, the plaintiffs alleged similar facts in which a debt-buying company, a law firm, and a process service company engaged in a "massive scheme" to fraudulently obtain default judgments against consumers in state court for debts which they did not owe, in whole or in part. The *Sykes* plaintiffs alleged that the debt buyer lacked proof to substantiate the claims against the consumers "because it typically did not purchase documentation of the consumers' indebtedness to the original creditors" but that law firm defendant nevertheless filed documents with the courts, including thousands of signed affidavits, attesting to personal knowledge that the debt in each collection action was valid.  The court held that these allegations stated a claim against the law firm defendant for violation of the NYJL §487.  *Sykes*, 757 F. Supp. 2d at 428-29 ("Plaintiffs' allegations regarding the fraudulent affidavits and other [court] filings provide adequate support for this claim against the Mel Harris defendants. Thus, the Mel Harris

14

defendants' motion to dismiss the Judiciary Law claim is denied."). *See also*, *Diaz v. Portfolio Recovery Assocs., LLC,* 2012 U.S. Dist. LEXIS 72724, *16-17 (E.D.N.Y. May 23, 2012) (where defendants debt buyer and law firm initiated lawsuits *en masse* against consumers in order to collect on otherwise time barred debt by obtaining default judgments, plaintiffs' "were sufficient to support a claim under Section 487.")

At a minimum, the record presents a question of fact regarding F&G's intent to deceive Plaintiff and the New York courts certainly and, summary judgment should be denied on the NYJL §487 claim.  *Shields v Carbone*, 78 A.D.3d 1440, 1442 (N.Y. App. Div. 3d Dep't 2010) ("Questions regarding O&A's intent similarly require denial of summary judgment on the Judiciary Law § 487 cause of action.")

### 2.  Plaintiff Has Sustained Damages

Any costs or expenses incurred in defending against litigation instituted by a complaint containing a material misrepresentation of fact, or defaulting in response to such litigation, are recognized as damages under Section 487.  *See Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 15 (N.Y. 2009) ("When a party commences an action grounded in a material misrepresentation of fact, the opposing party is obligated to defend or default and necessarily incurs legal expenses.").  Here, Plaintiff has shown damages resulting from costs and expenses incurred in defending against the LaCourte Action.   *See* Counter LR 56.1 Statement at ¶¶ 231-235.

### 3.  Defendant F&G's Alleged Defenses Should Be Rejected

F&G argues that it cannot be held liable under the NYJL §487 because F&G was entitled to rely on the false representations of the creditor when commencing the LaCourte Action.  (*See* Memorandum of Law In Support of Summary Judgment at 15 and cases cited therein).  This argument should be rejected. F&G had little to no contact with the creditor, American Express,

and was largely prohibited from contacting American Express pursuant to the NCO Standard Operating Procedure for the Attorney Network Services.  Instead, the record shows that F&G relied on the representations of NCOF concerning the alleged debt, including a select few documents from Plaintiff's American Express account which NCOF chose to provide to F&G.

The cases on which F&G relies concern the *bone fide* error and other affirmative defenses under the FDCPA, which do not apply here.  Indeed, the *bone fide* error affirmative defense requires a showing by defendant of (1) reasonable reliance on the creditor, and (2) establishment of systems and procedures designed to avoid error.  Even if F&G were to establish reasonable reliance on the creditor American Express, with whom it intentionally had little to no contact, it would also need to show the existence of extensive systems and procedures designed and implemented to avoid such errors.  *See Agostino v. Quest Diagnostics, Inc.,* 2011 U.S. Dist. LEXIS 127904, *17 (D.N.J. Nov. 3, 2011) (granting plaintiff summary judgment on FDCPA claim where debt collector failed to establish that it had procedures in place to prevent error of collecting on invalid debts); *cf.*, *Howe v. Reader's Digest Ass'n, Inc.* 686 F. Supp. 461 (S.D.N.Y. 1988), on which Defendants rely, (holding bone fide error defense applied where debt collector, Dial, and creditor, Reader's Digest Ass'n, maintained extensive systems and procedures to prevent billing errors.).  Here, there were absolutely no such systems and procedures in place to avoid error.  Indeed, the NCO Standard Operating Procedure for the Attorney Network Services ("SOP") precludes their establishment and directs Defendant F&G and the other network attorneys to litigate notwithstanding error.  Pursuant to the *NCOF ANS SOP*, F&G was financially incentivized to avoid due diligence or contact with the creditor in order to turn collection lawsuits into default judgments as quickly as possible.

Relying on *Hasbrouck v. Arrow Fin. Servs. LLC*,  2011 U.S. Dist. LEXIS 53928 (N.D. N.Y. May 19, 2011), Defendant F&G also argues that it was not "required to have all supporting documents to establish liability in-hand before filing suit."  *Hasbrouck* is distinguished on the facts.  First, *Hasbrouck* did not concern a claim for violation of Section 487.  Second, the plaintiff in *Hasbrouck* who alleged violation of the FDCPA did not dispute that she owed the underlying debt.  2011 U.S. Dist. LEXIS 53928 at *12-13.  Here, in contrast, all parties agree that Plaintiff does not owe the underlying debt.  Third, the business model of NCOF precludes F&G and other attorney network firms from obtaining the supporting documents necessary to establish liability, except in rare circumstances.  As a result, baseless lawsuits, like the LaCourte action, regularly are commenced as a matter of course.

### C.      Plaintiff's Claim for Civil Conspiracy To Violation NYJL Section 487 Against All Defendants Should Proceed to Trial

Defendants argue that a claim for civil conspiracy requires an independent, actionable tort,[1] that NCO cannot be held liable for a conspiracy to violate the NYJL §487 because it applies only to lawyers, and thus, NCO could not be found liable for conspiring with the F&G lawyers to violate the Judiciary Law.  But the very purpose of a civil conspiracy claim is "to connect someone to an otherwise actionable tort committed by another and establish that those actions were part of a common scheme." *Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001);  *Cunningham v. Hagedorn*, 72 A.D.2d 702 (N.Y. App. Div. 1st Dep't 1979) ("The allegation of conspiracy is permitted only to connect the actions of the separate defendants with an actionable injury and to show that these acts flowed from a common scheme or plan.").

Indeed, "[p]roof of the conspiracy is only important to connect defendant with the transaction and to charge him with the acts and declarations of his co-conspirators, where

---

[1] Plaintiff agrees that under New York law a claim for civil conspiracy requires an independent actionable tort, but disagrees that all defendants who conspire must also be found liable for the underlying tort.

otherwise he could not have been implicated." *Brackett v. Griswold*, 112 N.Y. 454 (N.Y. 1889). To require all defendants in a civil conspiracy claim also to be found liable for the underlying tort, as Defendants argue, would permit double recovery which clearly is prohibited. See, e.g., *Danahy v. Meese*, 84 A.D.2d 670, 672 (N.Y. App. Div. 4th Dep't 1981) ("if the conspiracy causes of action are allowed, plaintiff, having recovered on the substantive tort, would then be permitted a duplicative recovery on the conspiracy causes of action with the proof of nothing additional other than the agreement to commit the underlying tort."); *Cunningham v. Hagedorn*, 72 A.D.2d 702 (N.Y. App. Div. 1st Dep't 1979)(dismissing claim for civil conspiracy which is duplicative of underlying tort).

NCOF was at the very center of this scheme and cannot avoid liability for conspiracy.

**D.     Factual Questions Remain as to Whether Defendants
        Violated the Remaining FDCPA Claim**

For twenty-one months, Defendants each attempted to collect a debt from Plaintiff they have conceded was never owed.  Defendants' many letters and telephone calls demanding payment of a false debt is a clear FDCPA violation.  *See Easterling v. Collecto, Inc.*, 692 F.3d 229, 233-35 (2d Cir. 2012).  The majority of their violations have escaped scrutiny only due to this Court's prior ruling on the FDCPA statute of limitations.  During discovery in this case, Plaintiff and his counsel learned of NCOF's disturbing practice of transferring debts to another collector for the filing of debt collection lawsuits, after the debt had been timely disputed to NCOF, without informing the subsequent collector of the consumer's dispute.  Earlier this year, the Second Circuit held that precise practice to violate the FDCPA.

> Second, the court stated that this interpretation was sound because the statute provides for other protections in the event of a dispute, and those protections depend only on whether a debt was disputed, and not on whether there was a prior writing. ***For example, once a***

> ***debt has been disputed, a debt collector cannot communicate the debtor consumer's credit information to others without disclosing the dispute. 15 U.S.C. §1692e(8).***

*Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 285-86 (2d Cir. 2013) (internal citation omitted; Emphasis added).

This record demonstrates that same violation. NCOF's FDCPA "G Notice" to Plaintiff (*see* FDCPA §1692g) told him he could dispute the debt to NCOF within 30 days of October 18, 2010. *See* Counter LR 56.1 Statement at ¶¶ 153, 154. He did dispute the debt in a November 11, 2011 telephone call with a NCOF debt collector. *Id*. ¶¶ 155-159, 162. NCOF never notified F&G of Plaintiff's dispute, *Id*. ¶¶ 169-170, and F&G never asked. *Id*. ¶¶ 170, 171. As a result, F&G sued the Plaintiff making a number of false allegations to the state court. Years later, everything Plaintiff told NCOF in November 11, 2011 was proven true. All efforts by NCOF and F&G to collect the debt from Plaintiff after November 11, 2010, through July 2012, violate the FDCPA in the manner decided by *Hooks*. The FDCPA exists to prevent this precise misconduct.

Defendants nevertheless seek to dismiss the portion of Plaintiff's FDCPA claim resulting from their efforts to collect the debt on December 29, 2011. The discovery record and evidence on that issue remains equivocal, barring summary judgment for either side. For that reason, Plaintiff reserved this issue for the jury. The *NCOF ANS SOP* existing during litigation of the state court collection against required F&G to continue efforts to collect the debt during the pendency of the litigation. *See* Counter LR 56.1 Statement at ¶ 59.[2] NCOF's account notes on December 29, 2011 show a "telephone demand" made on the account. *See* Response at ¶ 61. On

---

[2]    *See* Reed Tr. 102:24 to 103:17 ("Q. What do you understand that to mean? A. I understand that to mean that even though suit is filed, the firm is expected to continue collections to try to obtain payment." REDACTED

its side the ledger, Defendants produced for summary judgment a declaration stating the December 29, 2011 (or December 28, 2011) was not made to the Plaintiff, but rather to his counsel, and no demand for payment of the debt was made.[3] Defendants did not produce any telephone company records supporting that claim.  Nor do they have any other proof as to the content of the December 29, 2011 "telephone demand."  The matter still presents factual disputes that require a determination by a jury.

**CONCLUSION**

For the reasons stated herein, Defendants' Motion for Summary Judgment should be denied.  Thereafter, this Court should enter a schedule for the parties' to brief Plaintiff's motion for class certification.

Respectfully submitted,

/s/ Joseph S. Tusa_____
**TUSA P.C.**
Joseph S. Tusa.
1979 Marcus Avenue, Ste. 201
Lake Success, NY  11042
Tel. (516) 622-2212


**GISKAN SOLOTAROFF ANDERSON
& STEWART LLP**

_____
Catherine E. Anderson
Oren Giskan
Jason Solotaroff
11 Broadway, Ste. 2150
New York, New York 10004
Tel. (212) 847-8315

---

[3]      Communications to a consumer's counsel can be actionable.  *Paulemon v. Tobin*, 30 F.3d 307, 308 (2d Cir. 1994); *Boyd v. J.E. Robert Co.*, 2012 U.S. Dist. LEXIS 143365, *19 (E.D.N.Y. Aug. 27, 2012).